Argued December 4, 1957, affirmed February 5, 1958

BLISS *v.* SOUTHERN PACIFIC CO. ET AL

321 P. 2d 324

*George P. Winslow*, Tillamook, argued the cause for appellant. On the brief were Winslow & Winslow, Tillamook.

*Edwin L. Graham*, Portland, and *D. E. Kaufman*, Tillamook, argued the cause for respondents. With them on the brief were Koerner, Young, McColloch & Dezendorf, Portland, and McMinimee & Kaufman, Tillamook.

Before LUSK, Presiding Justice, and WARNER and KESTER, Justices.

WARNER, J.

This is an appeal in action for damages sounding in tort, wherein Bern O. Bliss is plaintiff and the Southern Pacific Company, a corporation, Louis P. Hopkins, Lee H. Frederick, F. C. Nelson, Trask Lumber Company, a corporation, and O. H. Hill are defendants. From an order dismissing the amended complaint, plaintiff appeals.

The defendants Hopkins, Frederick and Nelson are officials of the defendant railway corporation and the defendant Hill is an officer of the defendant lumber corporation.

The instant orders from which the appeal is taken were preceded by an order sustaining the defendants' demurrers to plaintiff's first complaint on the ground that it did not state sufficient facts to constitute a cause of action. Plaintiff then filed an amended complaint (hereinafter referred to as the complaint) which was followed by a motion to strike it from the files for the reason that the last complaint was substantially the same as the original complaint to which the defendants had successfully demurred. The order striking the complaint granted plaintiff ten days in which to further plead, but when the plaintiff in open court waived this privilege, the court then and on the same day entered a further order dismissing the action. The court's action in allowing the motion to strike and dismissing the complaint are the orders occasioning the appeal. We will, therefore, first treat the matter as if the motion to strike was a demurrer testing the sufficiency of the amended complaint.

Plaintiff is a manufacturer and shipper of lumber products. In April, 1947, he leased from the defendant railroad a tract of land adjacent to the railroad company's tracks in Tillamook County for use as a loading dock to facilitate the shipping of his products via the defendant's railroad. The lease was limited to periods of one year for an annual rental of $30, payable in advance. According to the complaint, the lease had been extended from year to year until it was terminated on July 1, 1953.

The plaintiff summarily defines the character and purpose of the action as one derived from an unlawful conspiracy entered into by the defendants to bring about a termination of the lease in order to enable the defendant lumber company to obtain the leased premises, together with the loading dock and other improvements placed thereon by plaintiff, but without any compensation to plaintiff. He further avers that as a result of the asserted conspiracy, plaintiff's lease was terminated and he lost said property, which he alleges as of $19,800 in value.

### Custom and Usage

In order to get the vital provisions of the lease agreement in proper focus, at the outset we take note that paragraph VI of the complaint pleads the right of the railroad company to terminate said lease, as follows:

"That the defendant, Southern Pacific Company, during all the times herein mentioned, had entered into numerous similar leases with customers and shippers and it was the established and usual practice and custom of the Southern Pacific Company not to terminate said lease without cause and to extend and renew all of said lease agreements as long as the lessee paid the annual rental and

otherwise complied with the terms of said lease; that it was provided in said lease that plaintiff should not under-lease or sub-let said leased premises, or any part thereof, or assign said lease, or any interest therein, without the written consent of the defendant, Southern Pacific Company, and further, that said premises should be used by plaintiff solely and exclusively for construction, maintenance, and operation of lumber loading platform.

"That it was provided in said lease:

" 'If lessee shall make default with respect to any covenant, agreement or stipulation upon lessee's part herein contained, Railroad Company may at its option forthwith terminate this lease &ast; &ast; &ast;.'

"It was further provided in said lease:

" 'Notwithstanding anything hereinbefore contained, it is nevertheless understood and agreed between the parties hereto that Railroad Company may at any time during the term aforesaid, or extension thereof, or holding over hereunder, terminate this lease and the tenancy of Lessee of the premises aforesaid by thirty (30) days' notice in writing, and upon payment or tender to said Lessee of such a proportion of any rent which may have been paid in advance for the then current year as would otherwise have been applicable to the remainder of such current year next succeeding the termination of said tenancy by the notice herein provided for. Acceptance of the rental in advance by the Railroad Company shall not act as a waiver of its right to terminate this lease as herein provided.' "

By so pleading custom and usage, it is evident that the appellant is attempting to create a new right in himself and a corresponding duty in the railroad company and as a needed prop to the theory upon which his cause rests. This allegation of custom and usage standing alone might be sufficient to raise an inference of such right and duty, but when the appellant

in the same paragraph having alleged the foregoing haec verba quotations from the lease which gave the railroad a clear and absolute right to terminate the lease on thirty days' notice, what might otherwise be the value of pleading custom and usage is utterly destroyed and can avail the appellant nothing on this appeal.

██ The rule is well settled that when a custom or usage is inconsistent with the plain and unambiguous terms of a contract, it cannot be interposed to contradict or qualify its provisions, for in such a case, as here, the terms of the contract are evidence of the intentions of the parties to avoid the effect of such usage or custom. "It is sufficient ground for rejecting the custom that it is excluded by necessary implication." *Port Investment Co. v. Oregon Mutual Fire Insurance Co.,* 163 Or 1, 20, 21, 94 P2d 734, 124 ALR 1342; *Weyerhaeuser Timber Co. v. First National Bank,* 150 Or 172, 210, 38 P2d 48, 43 P2d 1078; *Interior Warehouse Co. v. Dunn,* 80 Or 528, 534, 157 P 806. Custom, when available to a party, is used in evidence only as a means of interpretation of a contract and not for the purpose of importing new terms into it. *Barnard & Bunker v. Houser,* 68 Or 240, 243, 137 P 227. If it were otherwise, plaintiff's claim of custom and usage would have the effect of giving him a tenancy in virtual perpetuity if sustained by prompt payment of an annual rental of $30.

## Conspiracy

Conspiracy being the gravamen of plaintiff's action, we now turn our attention to the question of whether or not plaintiff's complaint states a cause of action resulting from a conspiracy between all or any of the defendants. If we find no conspiracy, we will then

examine the complaint to determine if it sufficiently states any other cause of action invulnerable to demurrer.

    ■ In *Pitts v. King,* 141 Or 23, 28, 15 P2d 379, following 5 RCL 1060, we adopted the following as a definition for a conspiracy in a civil action:

> "A conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal by unlawful means."

Also see 15 CJS 1057, Conspiracy § 35; 11 Am Jur 543, Conspiracy § 3. Obviously inherent in this definition is the axiomatic corollary that every concerted action by two or more parties is not necessarily a conspiracy.

■ The primary purpose of a conspiracy must be to cause injury to another. In *Heitkemper v. Central Labor Council,* 99 Or 1, 25, 192 P 765, quoting with approval from 12 CJ 584, Conspiracy § 103, we stated the proposition this way:

> "So long as the object of the combination is to further its own fair interest or advantage, and not the injury of another, its members are not liable for any injury which is merely incidental." See, also, 15 CJS 1003, Conspiracy, § 8.

Cf. *Neustadt v. Employers Liability Assur. Corp.,* 303 Mass 321, 21 NE2d 538, 541; *Hunter Lyon, Inc. v. Walker,* 152 Fla 61, 11 S2d 176, 177.

■ Malice in civil cases does not mean merely ill will. It means the intentional doing of an injurious act without justification or excuse. *Linkhart v. Savely,* 190 Or 484, 506, 227 P2d 187; *Patterson v. Skoglund,* 181 Or 167, 179, 180 P2d 108; *Jaco v. Baker,* 174 Or 191, 199, 148 P2d 938.

■ In the absence of statute, conspiracy is not an independent tort, unless in a situation where mere force of numbers acting in unison or other exceptional circumstances make it a wrong. 15 CJS 1001, Conspiracy § 8; 11 Am Jur 577, Conspiracy § 45. A reading of plaintiff's brief indicates that he holds to a contrary view, that is, he regards a conspiracy as a separate tort. He says at page 35 of his brief:

> "It is probably true that the defendant, Southern Pacific Company, could have terminated plaintiff's agreement if it had acted alone, in good faith, without becoming in any way liable. However, when the defendant, Southern Pacific Company, entered into this conspiracy and combine, as alleged in plaintiff's amended complaint, with the other defendants to injure and destroy plaintiff's investment and property, it lost its immunity."

This, of course, is counter to all accepted definitions.

■ If, as the pleading indicates, the offending action from whence the instant matter is derived was the termination of the lease, then it follows, as we shall see, that there can be no tort to support the alleged conspiracy if the act of the railroad company was the result of an exercise of an absolute contractual right.

We will examine the complaint to determine if it sufficiently alleges a conspiracy on the part of the several officers impleaded as defendants and then measure the sufficiency of the charge against the defendant railroad and discuss them in that order. It is apparent, when we recall that it takes two or more to conspire, that if those defendants are not guilty of conspiracy in terms of plaintiff's pleading, the defendant lumber company is likewise exonerated as a conspirator, regardless of its motives or actions.

## The Defendant Corporate Officials

■ The individual defendants Hopkins, Frederick, Nelson and Hill are, as we have stated, officials of the corporate defendants and are so pleaded. No place in the complaint is it alleged that these defendants acted other than in their official capacities on behalf of their respective corporations. No allegation remotely indicates that they were pursuing their course as individuals or for individual advantage.

Without such an allegation the alleged acts of these defendants must be regarded as the acts of the corporations they represent and when so acting they cannot conspire with the corporation of which they are a part.

We find in *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.*, 200 F2d 911 (CCA 5th, 1952), an excellent and clear statement of the foregoing rule which governs the status of the four individual defendants impleaded in this matter and furnishes a complete answer as to their status in this litigation. The Nelson case was a civil action brought under the Sherman Anti-Trust Act to recover damages arising out of an alleged conspiracy to injure the plaintiff, a distributor of the defendant company. It was there alleged that the conspiracy existed between the defendant corporation, its president, sales manager and "its officers, employees, representatives and agents, who have been actively engaged in the management, direction, and control of the affairs and business of said defendant * * *." In dismissing the complaint for failure to state a cause of action, the court said at p 914:

> "* * * A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. * * * Nor is it

alleged affirmatively, expressly, or otherwise, that these officers, agents, and employees were actuated by any motives personal to themselves. Obviously, they were acting only for the defendant corporation. * * *

"We think that in naming these officers, employees and agents as conspirators the plaintiff was mistakenly attempting to avail himself of the doctrine that what it would not be illegal for a corporation to do alone would be illegal as a conspiracy when done with another legally separate person or entity. However, as stated by Judge Chestnut in Arthur v. Kraft-Phenix Cheese Corporation, D. C., 26 F. Supp. 824, 830, '* * * the inclusion of the defendant's agents in the alleged conspiracy would seem to be only the basis for a technical rather than a substantial charge of conspiracy because obviously the agents were acting only for the defendant corporation.' In the absence of any allegation whatever to indicate that the agents of the corporation were acting in other than their normal capacities, plaintiff has failed to state a cause of action based on conspiracy under Section 1 of the Act. (Citing cases.)"

Also see *Neumann v. Bastian-Blessing Co.*, 70 F Supp 447, 449 (DC ND Ill), and *Arthur v. Kraft-Phenix Cheese Corporation*, 26 F Supp 824, 830 (DC Md).

## *The Southern Pacific Company*

Does the complaint disclose that the Southern Pacific has committed an unlawful act or a lawful act by unlawful means upon which an action for conspiracy can be predicated? We do not think so. First, in every action of conspiracy, the element of malice must be alleged and proved, and, secondly, and the more compelling reason is that the pleading on its face does not show that the Southern Pacific is guilty of con-

spiracy, or, indeed, any tort in combination with others or by acting alone.

When we delete from consideration, as we are compelled to do, the allegations of custom and usage, we find that the Southern Pacific terminal rights and privileges under the lease stand unimpaired.

■ Incidental damage resulting from the exercise of an absolute right is not actionable, nor is it made so by augmenting the complaint with further allegations of conspiracy, malice and fraud.

Professor Prosser in his text on Torts (Hornbook Series) observes, at page 1018:

"* * * No case has been found in which intended but purely incidental interference resulting from the pursuit of the defendant's own ends by proper means has been held to be actionable. * * *"

In 30 Am Jur 88, Interference § 39, we find this cogent statement on the subject of "absolute rights":

"If the distinction between the exercise by an individual of his absolute rights, and the exercise by him of his qualified or common rights, is kept in mind, much of the seeming conflict apparently to be found in the cases considering the general question as to the effect of malice will be obviated. Absolute rights are rights incident to the ownership of property, *rights growing out of contractual relations,* or the right to enter or refuse to enter into contractual relations. These rights the individual may exercise without reference to his motive as to any injury directly resulting therefrom, since the courts, apparently on the ground of expediency, have consistently held that such injury is not a legal injury in the sense that it is actionable. * * *" (Emphasis ours.)

Also see *Quinlivan v. Brown Oil Co.,* 96 Mont 147, 29 P2d 374, 377; Annotations 26 ALR2d § 23, p 1259. The only act alleged as the result of the conspiratorial action is that the plaintiff's rights were lost by the sole action of the railroad in the exercise of its absolute contractual right to terminate the lease as it did. This is found in paragraph IX. The doing of a lawful thing in a lawful way is not tinctured or made less lawful by elsewhere describing it as the product of derogatory motives on the part of the doer.

When two or more persons competent for that purpose, upon a sufficient consideration, voluntarily agree to do or not to do a particular thing which may be lawfully done or omitted, they should be held to the consequences of their bargain. It is elementary that public policy requires that such contracts shall be held sacred and shall be enforced by the courts of justice unless some other overpowering rule of public policy intervenes which renders such agreement illegal or unenforceable. *Eldridge v. Johnston,* 195 Or 379, 405, 245 P2d 239; *Kelite Products, Inc. v. Brandt,* 206 Or 636, 653, 294 P2d 320. This rule imposes upon the court a duty to give contracts of that character effect, especially when they have been acted upon by the parties. *Marnon v. Vaughn Motor Co., Inc.,* 184 Or 103, 167, 194 P2d 992. Without such a rule the commerce of the world would soon lapse into a chaotic state.

If, however, a given enforceable contract creates rights and privileges in one of the parties, his motives for the exercise of such rights or privileges so conferred are immaterial. As was said in *Passaic Print Works v. Ely & Walker Dry-Goods Co.,* 105 F 163, 166 (8th CC):

"* * * it is a general rule that the bad motive which inspires an act will not change its complexion,

and render it unlawful, if otherwise the act was done in the exercise of an undoubted right. Or, as has sometimes been said, 'when an act done is, apart from the feelings which prompted it, legal, the civil law ought to take no cognizance of its motive.' * * * "

Also see *Case v. Kadota Fig Ass'n of Producers,* 207 P2d 86, 99; *McMaster v. Ford Motor Co.,* 122 SC 244, 115 SE 244, 245.

The matter of the unimportance of the motive which moves a party to enforce his rights under a given contract is summarized by 2 Cooley on Torts (3d ed) p 1505, by the following persuasive statement:

"Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. 'An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent.' 'Where one exercises a legal right only, the motive which actuates him is immaterial.' When in legal pleadings the defendant is charged with having wrongfully and unlawfully done the act complained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged. * * *"

The case of *Ringler v. Ruby,* 117 Or 455, 244 P 509, 46 ALR 245, was an action by a real estate broker to recover loss of commissions from the purchaser on the theory that the purchaser had interfered with the performance of plaintiff's contract with the owner of the property by dealing directly with the broker's client. At page 462 this court said:

"Plaintiff could not recover upon the theory that defendant caused a breach of contract between him and the owner, for the latter did only that which he had a legal right to do. * * *"

and also at page 464:

> "* * * To recover, it was essential for plaintiff to have alleged and established that he would have been able to have performed his contract had he not been prevented from doing so by the alleged fraud of defendant. It is not sufficient merely to show that defendant wrongfully interfered with plaintiff's contractual relations with Mesher, but it must also be established that plaintiff sustained damages as a result thereof."

Therefore, even if the railroad company had evil motives for its action, they become unimportant as long as it conformed its acts of termination to the rights conferred upon it by the agreement. The pleading clearly indicates such was its course. The pleading revealing as it does an unquestioned right to terminate the lease, the action taken by the railroad is not tortious. It follows then that in the absence of such wrongful action on the part of the Southern Pacific, there is no foundation upon which a charge of conspiracy can rest.

Nor do we believe, for the reasons which follow, that the complaint reveals that the lumber company is guilty of fraudulently inducing the railroad company to terminate plaintiff's lease. Turning again to paragraph IX of the complaint, we find allegations that the lumber company made certain fraudulent representations to the Southern Pacific that plaintiff had violated the lease. However, in the same paragraph, plaintiff further alleges that the railroad terminated the lease "with knowledge that each and all of said representations were false and untrue * * *." Thus, in spite of the defendants' alleged fraud, it admittedly had no effect because the railroad placed no reliance thereon. It follows, therefore, that the charge that the lumber company *induced* the railroad through its

false representations to terminate the lease with plaintiff are negatived by this allegation. Moreover, as we have previously observed, plaintiff by pleading in paragraph VI haec verba the terminal privileges reserved by the Southern Pacific shows that the railroad had an absolute and unqualified right to end the lease "at any time  *  *  *  by thirty (30) days' notice in writing" regardless of whether or not the plaintiff was guilty of any default thereunder.

It was incumbent upon plaintiff to allege something more than an expectancy based on custom and practice as he did in paragraph VI of the complaint and contrary to the plain and clear provisions of the lease agreement. *Ringler v. Ruby,* supra, at p 464. It was also necessary that the complaint contain averments that the railroad company without knowing that the lumber company's representations were false, accepted them as being true and terminated the lease in reliance thereon. To allege as plaintiff does: "That said defendant Southern Pacific Company  *  *  *  *pretended* to accept said representations as true  *  *  *," is an equivocal allegation and not sufficient, especially when followed, as it was, with a further allegation that the railroad company knew that the statements were false. (Emphasis ours.)

Viewing the complaint in a light most favorable to the plaintiff, it appears that it does not plead a conspiracy as to the railroad nor does it reveal that the Southern Pacific Company was guilty of any tortious conduct.

## *Trask Lumber Company*

■ Notwithstanding the assertion of plaintiff that the most serious question on this appeal is whether or not a cause of action is stated against the defendant

Southern Pacific Company, we will pass to a consideration of the pleading in respect to the defendant Trask Lumber Company. In so doing, we are moved by the familiar rule that a pleading is not vulnerable to demurrer if it states any cause of action.

Obviously, Trask Lumber Company cannot be charged with conspiracy if, as we have found, the complaint does not successfully plead a conspiracy on the part of any of its codefendants. A party cannot under the definition conspire with itself.

Certain allegations found in the complaint vaguely suggest the possibility of the presence of two causes of action against the Trask Lumber Company: One for trover and conversion, and the other for an unlawful interference with plaintiff's contractual rights under the lease. For the reasons which follow, neither, in our opinion, are well pleaded.

The reference to a conversion is found in paragraph X of the amended complaint. It is a part of the new matter there inserted after the court's ruling on the demurrer to the first complaint. It reads:

"* * * that the Trask Lumber Company was immediately let into the possession of said location *and all of plaintiff's property was immediately converted to defendants' own use*; * * *." (Emphasis ours.)

It affirmatively appears from other allegations of the complaint that appellant's property was situated on the leased premises of the railroad company. From this it may be inferred that 30 days after July 1, 1953, the effective terminal date, the Southern Pacific Company automatically came into rightful possession of such of plaintiff's property that he had a right to remove under the lease but failed to remove within

the 30-day period stipulated. Where a complaint shows, as here, that the defendants' claim of possession was originally rightful, one cannot be guilty of conversion until there has been a demand for the return of the property followed by a refusal to respond to the demand. *Jeffries v. Pankow,* 112 Or 439, 446, 223 P 745, 229 P 903. The complaint includes no allegation of that character.

■ The law not only prohibits an unjustifiable interference by a third party with contract rights of any party to an agreement, but also prohibits the malicious interference with their prospective rights. *Kamm v. Flink,* 113 NJL 582, 175 A 62; *Skene v. Carayanis,* 103 Conn 708, 131 A 497; *Johnson v. Gustafson,* 201 Minn 629, 277 NW 252; *Original Ballet Russe v. Ballet Theater,* 133 F2d 187 (CCA 3d).

Here plaintiff's claim of interference with plaintiff's rights under the lease finds expression in paragraph IX of the complaint in these words: "* * * the defendants * * *, Trask Lumber Company, wilfully, falsely, wickedly, fraudulently and maliciously represented to the defendant, Southern Pacific Company, that plaintiff had violated the terms of plaintiff's lease * * *" in the particular instances thereafter mentioned. But, as we have hereinbefore demonstrated, the Southern Pacific Company by the further allegations of the same paragraph placed no reliance on the representations made and this being so, the acts of the Trask Lumber Company were not the proximate cause of such damage as plaintiff claims to have sustained.

We find nothing in the record before us to warrant holding that plaintiff has sufficiently pleaded any right of action against the defendant Trask Lumber Company.

We now revert to plaintiff's challenge addressed to the court's order striking his amended complaint from the files and which was because it was substantially the same as the first complaint. It was, therefore, a sham and frivolous response to the court's order sustaining the demurrer made to the first complaint. The court's ruling on the demurrer was supported by a well-considered written opinion which should have served as a guide to such further action that the plaintiff might desire to take.

■ Plaintiff is correct in his assertion that great liberality is indulged in by courts in the allowance of amendments. But this does not mean that every proffered amendment should be allowed. Each amendment should be considered on its merits and we have examined the only two amendments made.

The first added to paragraph VIII the allegations which state the location of the lumber company's two loading docks on leased property of the Southern Pacific Company, one being immediately north and one being immediately south of plaintiff's leasehold.

The other amendment added to paragraph X the averments of the impracticability of removing plaintiff's improvements without loss, coupled with the further assertion that the lumber company has converted them to its own use, and this notwithstanding that we learn from the notice of termination pleaded haec verba in paragraph IX that plaintiff had no property under the terms of the lease for which he had an absolute right to receive compensation.

They are both evidentiary in character and the one made to paragraph X is negatived by allegations found in paragraphs VI and IX. Both failed to meet the deficiencies pointed out by the court in its written opinion.

■ When an amended pleading offers no material allegation not contained in the original complaint, it is frivolous and the court may strike it from the files. Such has long been the rule. *Farris v. Hayes,* 9 Or 81, 87; *State v. Bishop,* 169 Or 448, 475, 127 P2d 736, 129 P2d 276; *Lawrence Warehouse Company v. The Best Lumber Co., Inc.,* 202 Or 77, 89, 271 P2d 661.

■ No error was committed by the court in striking the amended complaint from the files and upon plaintiff's waiver of right to plead further in dismissing the case.

Affirmed.