**ESTEY & ASSOCIATES, INC., an Oregon corporation, dba Lucky JT Distributing Co., Plaintiff,**

v.

**McCULLOCH CORPORATION, a Maryland corporation, Black & Decker Corporation, a Maryland corporation fka The Black and Decker Manufacturing Company; Black & Decker (U.S.) Inc., a Maryland corporation; and Black & Decker, Inc., a Delaware corporation, Defendants.**

Civ. No. 83–1416–RE.

United States District Court, D. Oregon.

March 14, 1986.

R. Alan Wight, Peter C. Richter, James F. Dulcich, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

George L. Wagner, James E. Bartels, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant McCulloch Corp.

Don H. Marmaduke, Scott G. Seidman, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendants Black & Decker Corp., Black & Decker (U.S.), Inc., and Black & Decker, Inc.

## OPINION

REDDEN, District Judge:

Plaintiff brings this suit against defendants McCulloch and Black & Decker on account of the termination of the distributorship relationship between McCulloch and plaintiff on September 1, 1983. A series of antitrust claims have been asserted to broaden the attack. McCulloch in turn has made a counterclaim against plaintiff. Defendants move for summary judgment on all the claims, and on the counterclaim. Summary judgment is granted in each case for defendants.

## BACKGROUND

Plaintiff Estey & Associates, Inc., a distributor, does business as Lucky JT Distributing Co. Defendant McCulloch Corporation is a Maryland corporation (McCulloch Corp.). McCulloch Corp. should not be confused with what I refer to herein as the McCulloch business. McCulloch business is now part of McCulloch Corp., but prior to March 31, 1983, it was a division and then a subsidiary of defendant Black & Decker (U.S.), Inc. McCulloch business deals with products having the McCulloch trade name, including chain saws, chain saw accessories and log splitters. There are three Black & Decker defendants: Black & Decker Corporation, a Maryland corporation; Black & Decker (U.S.), Inc., a Maryland corporation; and Black & Decker, Inc., a Delaware corporation. I treat them collectively as Black & Decker.

The McCulloch business sometimes uses a two-step marketing system, selling to wholesale distributors who then sell to retailers. Sometimes it sells directly to retailers. Lucky and its predecessors have long served as wholesale distributors of McCulloch business products.

Friction developed between the McCulloch business and Lucky in the fall of 1981. Pacific Marine Schwabacher, Inc. (PMSI), another wholesale distributor for McCulloch, ceased doing business in November of 1981. Lucky assumed PMSI's distribution responsibilities hoping to sell to retailers in the region, especially Ernst Home Centers (Ernst), a large account. Lucky purchased the PMSI inventory and leased a warehouse for their storage.

McCulloch business began selling directly to Ernst. Prior to such direct sales, McCulloch business decided to compete for

the Ernst account, but implied to Lucky that it would not do so.

Until late 1981, the relationship between McCulloch business and Lucky was based on a written agreement. The last agreement was signed on December 31, 1980, and expired in 1981. It permitted either party to terminate upon 30 days' notice, with or without cause. Negotiations for a subsequent written contract were unsuccessful. Lucky continued to act as a distributor.

On March 31, 1983, Black & Decker transferred McCulloch business to McCulloch Corp. McCulloch Corp. continued to deal with Lucky.

Lucky carried products of McCulloch business competitors, and in March 1983 became a distributor for Poulan/Weed Eater, a major competitor. On September 1, 1983, McCulloch Corp. notified Lucky that the distributor relationship was terminated as of November 1, 1983.

Estey filed this action, citing several claims: price discrimination under the Robinson-Patman Act, against both McCulloch Corp. and Black & Decker; attempted monopolization under the Sherman Act and under Oregon antitrust laws, against McCulloch Corp.; breach of contract, promissory estoppel and equitable recoupment against McCulloch Corp.; and bad faith termination of a contract, against McCulloch Corp. Other claims have been abandoned. McCulloch Corp. has counterclaimed for $182,360.29 for goods sold to Estey but not paid for.

## DISCUSSION

### A. *Standard*

A summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R. Civ.P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Commission v. Murphy*, 626 F.2d 633, 640 (9th Cir.1980). All reasonable doubts as to the existence of genuine issues must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Company of North America*, 638 F.2d 136, 140 (9th Cir.1981).

■ Summary judgment should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). However, antitrust claims are not immune from summary judgment, and summary judgment should be granted when there is no genuine issue of material fact. *Ron Tonkin Gran Turismo v. Fiat Distributors*, 637 F.2d 1376, 1381 (9th Cir.1981).

### B. *Claims*

#### 1. *Termination*

The Seventh and Eighth Claims are a series of theories concerning the termination by McCulloch of plaintiff as a wholesale distributor. I begin with these claims because they are the true heart of this litigation. The four theories are: 1) breach of contract; 2) bad faith termination; 3) promissory estoppel; and 4) equitable recoupment.

The contract claim is invalid because any contract between McCulloch Corp. and plaintiff was terminable at will. Under Oregon law, a contract of indefinite duration is terminable at will. *Andersen v. Waco Scaffold & Equip.*, 259 Or. 100, 105, 485 P.2d 1091 (1971). The motive of a person exercising a contractual right cannot render that exercise unlawful. *Bliss v. Southern Pacific Co., et al.*, 212 Or. 634, 646–47, 321 P.2d 324 (1958).

■ McCulloch announced termination of the distributorship relationship five months after it began, effective in two

months. It thereby exercised its contractual right to terminate and there is no breach of contract.

Plaintiff argues that the 1981 contract between Black & Decker and plaintiff is relevant and must be considered. That contract stated that California law would apply to all contractual disputes. Plaintiff argues that California law requires good cause for termination of such a contract. The argument plaintiff advances for McCulloch Corp.'s responsibility for the prior actions of another corporation is the "mere continuation" theory.

■ Generally, a corporation acquiring all or substantially all of the assets of another corporation does not thereby automatically assume liability for the debts of the vendor corporation. *Peterson v. Harville*, 445 F.Supp. 16, 24 (D.Or.1977). The corporate status of the buyer will be respected absent special circumstances, such as the corporation's operation without a certificate of incorporation, or fraud. *Id.* at 25–26. Another exception, never accepted or rejected by Oregon courts, occurs when the buyer is a mere continuation of the seller. *Goldstein v. Gardner*, 444 F.Supp. 581, 583 (N.D.Ill.1978). The theory of the exception is that if a corporation goes through a mere change of *form* without substantial change in *substance*, then it should not be allowed to thereby avoid liability. Thus, *Groover v. West Coast Shipping Co., Inc.*, 479 F.Supp. 950, 951 (S.D.N.Y.1979):

> In general, a corporation that purchases the assets of another corporation does not assume the liabilities of the selling corporation ...

However, plaintiff has sought to invoke the exception to this general rule of nonliability that a purchasing corporation will be held liable for the liabilities of a selling corporation if 'the successor corporation is a mere continuation of the seller.' *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y.1977). In *Ladjevardian*, the court stated, 'A continuation envisions a common identify of directors, stockholders and the existence of only one corporation at the completion of the transfer. [Citation omitted]. What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale.' *See also Goldstein*, 444 F.Supp. at 584.

■ Even if the Oregon courts accept this theory, it would not apply here. Black & Decker not only continues in existence but it continues to be traded on the New York Stock Exchange. Black & Decker and McCulloch Corp. are not characterized by common officers, directors, or shareholders.

Because the exception is inapplicable here, the prior contract is irrelevant. The business relationship was terminable at will.

■ The claim for bad faith termination fails. Plaintiff cannot point to an Oregon case in which a bad faith termination of an at will contract supports liability. Indeed, to allow such a claim would emasculate the termination at will doctrine, and must be rejected.

■ The promissory estoppel theory also fails. It fails because it requires a promise; actual reliance on the promise; a substantial change in position by the promisee, and reasonable foreseeability by the promisor that his promise would induce the conduct which occurred. *Schafer, et al. v. Fraser, et ux.*, 206 Or. 446, 472, 290 P.2d 190 (1955). Plaintiff alleges promises by Black & Decker but not by McCulloch Corp. The mere continuation doctrine does not apply, and so no promise can be imputed to McCulloch Corp. Since there was no promise, there can be no claim.

■ The equitable recoupment theory also fails. Oregon recognizes no such doctrine. The doctrine is designed to remedy an inequity "which arises when a manufacturer, after having required a distributor to make a sizeable investment in the furtherance of a distributorship, terminates the working relationship without just cause, leaving the distributor with substantial unrecovered expenditures." *Ag-Chem Equipment Co., Inc. v. Hahn, Inc.*, 480 F.2d 482, 487 (8th Cir.1973). It applies when an agreement which is terminable at

will is terminated without providing the distributor reasonable time to recoup his recent expenses. *Id.* at 486–88. The damages allowed under the doctrine are restitutionary and not prospective in nature; it allows recovery of the initial or continuing investment required of the franchisee, reduced by any profits earned. *Schultz v. Onan Corp.*, 737 F.2d 339, 348 (3rd Cir. 1984).

■ McCulloch Corp. did not request plaintiff to make an investment, but plaintiff claims that Black & Decker did so. The mere continuation theory is inapplicable and so if Lucky leased the warehouse at the request or demand of Black & Decker, it does not render McCulloch Corp. responsible. Plaintiff fails to allege any expenditures incurred at the request or demand of McCulloch Corp. and so this claim fails.

## 2. *Price Discrimination*

Plaintiff brings this claim under the Robinson-Patman Act, 15 U.S.C. § 13(a). It claims that both Black & Decker and McCulloch Corp. charged lower prices to their retailers than to their wholesale distributors.

■ A buyer must be a competing customer with the person given preferential prices to fit within the protection of this law. *F.T.C. v. Fred Meyer, Inc.*, 390 U.S. 341, 348–49, 88 S.Ct. 904, 908–09, 19 L.Ed.2d 1222 (1968). Retailers and wholesalers are not on the same functional level, and are therefore not competing customers. *Id.* at 348–49, 88 S.Ct. at 908–09. The retailers to whom defendants sold were not competing customers of plaintiff, and no claim can lie under the Robinson-Patman Act.

## 3. *Attempted Monopolization*

This claim is brought under the Sherman Act, 15 U.S.C. § 2, and the Oregon antitrust laws.

■ Proof of an attempt to monopolize requires three elements: 1) specific intent to control prices or destroy competition with respect to a part of commerce, 2)

predatory or anticompetitive conduct directed to accomplishing the unlawful purpose, and 3) a dangerous probability of success. *Purex Corp. v. Proctor & Gamble Co.*, 596 F.2d 881, 890 (9th Cir.1979).

■ McCulloch Corp. argues that there is no anticompetitive conduct when one distributor is replaced by another. In this case, McCulloch appointed another wholesale distributor to replace plaintiff, and plaintiff has remained in business as a distributor of products of others. Plaintiff is unable to cite a case in which such a replacement has been held to constitute anticompetitive conduct. Plaintiff offers no argument why defendants' actions constitute attempted monopoly. This substitution of distributors is merely an exercise of the right to deal, or refuse to deal, with whomever defendants choose. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). These claims are dismissed.

## 4. *Breach of Contract and Fraud*

Plaintiff brings this claim against both defendants. The basis is an alleged promise by defendants not to compete with plaintiff for the Ernst account. The contract claim is based on the theory that defendants' promised not to compete for the Ernst account. The fraud claim is based on the theory that defendants represented to plaintiff that they would not compete, inducing reliance and leading to plaintiff's purchase of the PMSI inventory.

McCulloch Corp, is not liable on either theory because it had no involvement with these events. It bought the McCulloch business in 1983, more than a year after the dealings between Black & Decker and the plaintiff.

■ Black & Decker is not liable for fraud because of the statute of limitations. O.R.S. 12.110 states:

(1) An action for . . . any injury to the person or rights of another, not arising on contract, . . . shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to com-

mence only from the discovery of the fraud or deceit.

"Discovery" is an objective term; the period of limitation for fraud begins to run when the plaintiff knew or through the exercise of reasonable care should have known of the alleged fraud. *Kinyon v. Cardon*, 69 Or.App. 546, 686 P.2d 1048 (1984).

James France, Lucky's sales manager, knew in December of 1981 that Ernst was meeting with McCulloch business, and that Ernst could not guarantee to purchase from Lucky. (France deposition of July 17, 1984, pages 55–56). Lucky knew by early 1982 that Black & Decker was selling to Ernst, and thus not respecting any alleged promise. Reasonable discovery cannot be placed later than 1982. Plaintiff filed its claim against Black & Decker on March 12, 1985. The statute of limitations had thus expired.

 A contract requires a clear and unequivocal acceptance of a certain and definite offer. *Cook v. The MV Wasaborg*, 189 F.Supp. 464, 468 (D.Or.1960). Plaintiff claims that a contract was formed when Black & Decker promised not to compete, and that this contract was later breached by Black & Decker's sales to Ernst. There was, however, no promise and no contract.

John Sherman, in his affidavit of February 21, 1986, did state that representations were made:

> 5. A very large percentage of PMSI's total sales in western Washington had been to Ernst Home Centers ("Ernst"). Our decision to purchase the PMSI inventory was based largely on the representations by McCulloch representatives that McCulloch would not compete with plaintiff for the Ernst business, and that plaintiff would have the opportunity to sell McCulloch products to Ernst.

However, "An affidavit containing ultimate facts or conclusions of law cannot defeat a summary judgment motion under Rule 56(e)." *Sanders v. Douglas*, 565 F.Supp. 78, 80 (9th Cir.1983). Sherman's affidavit simply asserts that "representations" were made. This conclusory statement does not state the representations, when they were made, or by whom. The deposition testimony of Sherman and of James France must be considered. Sherman mentions only two meetings with Black & Decker in the fall of 1981. As to the October 22 meeting in Los Angeles, he states:

> Q. And what was said, if anything, by any of the McCulloch people at the pocket meeting in response to the statement that Lucky had to have the Ernst account?
>
> A. That Lucky had been doing business with Ernst long enough that we certainly understood or should understand Ernst's method in doing business, that probably we could do as good a job or better job and there was certainly no reason why we should not retain that business.

(Sherman deposition of August 7, 1984, at pages 91–93).

At the November 18, 1981 meeting there was a similar lack of a promise, according to Sherman's own account:

> A. Well, as I said before, the Ernst account was always discussed, and I particularly brought it to attention that the Ernst account was very, very important to any decision that we made to take on that area because certain things had to be discussed and certain saws and product [sic] had to be maintained by Lucky-JT if we were going to sell to that account, and that if it did not include the right and privilege to sell to Ernst, then we were really not interested in taking over the territory.
>
> Q. What did Marty or E J [of the McCulloch business] say to you about Ernst?
>
> A. That there was certainly no reason in their thinking why we should not be able to maintain that account.
>
> Q. Was there any discussion in that meeting about whether McCulloch was going to sell direct to Ernst?
>
> A. That McCulloch had no intention as far as they were concerned, to contact Ernst. (Sherman deposition of August 7, 1984, at pages 97–98).

France's deposition also reveals that if defendant was deliberately misleading, it made no promise not to compete.

Q. McCulloch couldn't promise you the Ernst business would be yours or, in other words, Ernst would buy from you?

A. We didn't discuss it.

Q. You didn't discuss it with McCulloch at all?

A. What we discussed was that they felt Ernst would be a natural for us to take over the Ernst account. That was when we were negotiating to take over from PMSI with E J Scott. What was said was that he felt that it would be a natural thing for us to take over because we were already doing business with Ernst Hardware.

Q. Did you understand that McCulloch had promised you that you would have the Ernst business?

A. I don't remember promising us.

. . . . .

Q. Did you feel that you had been betrayed by—or Lucky-JT had been betrayed by McCulloch when McCulloch began selling direct to Ernst?

A. Yes.

Q. Did you feel McCulloch had broken a promise to Lucky-JT?

A. Oh, I said—I didn't say there was a promise. I think there's a code of ethics, but I don't think there ever is a promise in business or anything.

(Deposition of France of July 17, 1984, pages 138–40).

The above, viewed in the light most favorable to plaintiff, shows that Black & Decker deliberately misled plaintiff into believing it would not compete for the Ernst business. Although this might support a fraud claim, the statute has run. No promise was made not to compete, and no contract was formed. Consequently, the motion for summary judgment is granted to this claim.

### 5. Counterclaim

McCulloch Corp. has counterclaimed for $182,360.29 on the basis that it sold plaintiff goods for that price in 1983 at plaintiff's request, and was never paid. McCulloch establishes its prima facie case with its Request for Admission No. 3:

Request No. 3: From and after April 1, 1983 plaintiff ordered and received goods from defendant for the agreed upon price of $182,360.24, but has not paid defendant for said goods. Response to Request No. 3: Admitted.*

Plaintiff argues that McCulloch Corp. breached its implied contractual duty of good faith and fair dealing by not repurchasing the goods when plaintiff failed to land the Ernst business. McCulloch did not contract to repurchase goods although Estey had proposed such during contract negotiations. McCulloch had no duty to repurchase from plaintiff.

### CONCLUSION

Summary judgment is granted to defendants on all claims by plaintiff, and to defendant McCulloch Corporation on its counterclaim.

There was no breach of contract when the terminable at will distributorship was so terminated.

The termination was not rendered wrongful by a promissory estoppel theory, since it was Black & Decker and not McCulloch Corporation which was allegedly bound. The mere continuation doctrine does not apply.

Equitable recoupment does not apply because McCulloch Corporation never required plaintiff to make an investment.

The price discrimination claim fails because plaintiff was not a competing customer with the preferred retailers.

The attempted monopolization claim fails because the replacement of one distributor by another is not anticompetitive conduct.

The breach of contract and fraud claim cannot be maintained against McCulloch Corporation because it was not involved in the pertinent acts.

* The Request has a minor error. The correct figure is $182,360.29.

The fraud claim against Black & Decker is barred by the statute of limitations.

The contract claim against Black & Decker fails because they did not agree not to compete and no such contract was formed.

The counterclaim is valid.