**CHILTON AIR COOLED ENGINES, INC.**

v.

**OMARK INDUSTRIES, INC.**

No. 3–87–0390.

United States District Court,
M.D. Tennessee.
Nashville, Division.

May 5, 1988.

Michael T. Reid, Neil J. Kuenn, Halfpenny, Hahn & Roche, Chicago, Ill., Thomas E. Roche, Robert M. Garfinkle, Edwin M. Walker, McMackin, Garfinkle & McLemore, Nashville, Tenn., for plaintiff.

Thomas H. Peebles, III, Nashville, Tenn., Ellen Hobbs Lyle, Trabue, Sturdivant & Dewitt, Don H. Marmaduke, Scott G. Seidman, and Philip S. Van Der Weele, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This case comes before the Court on the defendant's motion for partial dismissal under Fed.R.Civ.P. 12(b)(6).[1]

Omark Industries, Inc., an Oregon corporation licensed to do business in Tennessee, is a manufacturer of Oregon brand products, including cutting chains, chain saw products, parts, and accessories. On December 1, 1981, Chilton Air Cooled Engines, Inc., a Tennessee corporation, entered into a distribution agreement with Omark.[2] Chilton obtained a non-exclusive territory of 44 middle Tennessee counties, purchased an inventory from Omark, established a network of retail dealers, and agreed to use its best efforts to market Oregon brand products.[3] Chilton was in competition with other distributors of Oregon based products in Middle Tennessee.[4] By its terms and by the admissions of the parties,[5] the distributorship agreement is a contract of indefinite duration and may be terminated by either party for any reason with 30 days' notice. The agreement also provides that construction of the contract is governed by Oregon law.[6]

Chilton claims its distributorship was highly successful in part because it sold Oregon brand goods for low prices.[7] Chilton purportedly passed along these low prices to a retailer, Baileys Inc., a California corporation doing business in Tennessee. Chilton says that rival distributors conspired with Omark to fix prices for Oregon brand goods and to boycott sales to Baileys. Chilton alleges that Omark, urged on by the competing distributors, told Chilton to increase its prices[8] and to stop selling Oregon brand goods to Baileys.[9] When Chilton refused to cooperate, its distributorship was terminated and other distributors were told about the termination.[10]

In addition to its federal antitrust claims,[11] Chilton asserts a variety of claims under state law, namely: (1) that Omark is required to repurchase Chilton's inventory [Count IV]; (2) that Chilton's termination is wrongful because it breaches the implied covenant of good faith in contracts [Count V]; (3) that loss of Baileys' business after the termination constitutes malicious interference with prospective business relations [Count VI]; (4) that Chilton is entitled to equitable recoupment of its investment [Count VII]; and (5) that Omark's actions violate the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 et seq. [Count VIII]. Defendant's motion to dismiss addresses only these state law claims.

Under Fed.R.Civ.P. 8, a complaint need only set forth a general statement of facts

---

1. In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all facts alleged in the complaint as true. *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 279 (6th Cir.1987). Accordingly, the facts set forth in this opinion are derived from plaintiff's first amended complaint.

2. Complaint at Count I, ¶ 5; Exhibit A.

3. Complaint at Count I, ¶ 5, 6, 11.

4. Complaint at Count I, ¶ 14.

5. Complaint at Count I, ¶ 7; Exhibit A at ¶ 12.

6. Exhibit A at ¶ 17.

7. Complaint at Count I, ¶ 14.

8. Complaint at Count II, ¶ 17; Count III, ¶ 17, 18, 19b.

9. Complaint at Count I, ¶ 19; Count III, ¶ 19, 20.

10. Complaint at Count I, ¶ 19 e-f. The distributorship was terminated effective June 2, 1986.

11. Count I alleges violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1973) and is brought under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1988). Counts II and III also allege violations of Section 1 of the Sherman Act.

from which the defendant can frame a responsive pleading. It is merely a short plain statement showing the pleader is entitled to relief. *See* Fed.R.Civ.P. 8; C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 598 (1969). Because the standard for pleading is so liberal, motions to dismiss for failure to state a claim on which relief can be granted are disfavored and rarely granted. *Id.* To evaluate the motion, the Court must accept all facts alleged in the complaint as true. *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987). The Court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id., citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Before addressing the merits of defendant's motion, the Court must first determine what state's law to apply to plaintiff's tort and contract claims. In a diversity case, a federal court applies the choice of law rules of the forum in which it sits. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Hence, this Court ordinarily applies Tennessee's choice of law rules. But this case has been transferred from the Northern District of Illinois for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). When a district court transfers a case for convenience, the choice of law rules of the transferor court apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Martin v. Stokes*, 623 F.2d 469 (6th Cir.1980). Therefore, the Court must apply Illinois' choice of law rules to the claims arising under state law. These claims may be characterized as causes of action in tort and in contract.

The distributorship agreement itself says that the parties chose Oregon law to govern the agreement. Under Illinois choice of law rules, the law applicable to a contract is generally that which the parties intended, assuming such an intent. *Three D Departments, Inc. v. K Mart Corp.*, 670 F.Supp. 1404, 1407 (N.D.Ill., 1987), *citing*

*Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454, 458 (1975). When that intent is expressed, it should be followed. *Id.* Therefore, Oregon law will be applied to plaintiff's contract claims.

■ In a tort action in a diversity case, Illinois applies the most significant contacts tests to determine which state law to apply. *See Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503, (7th Cir.1984), *citing Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). Significant contacts include:

a) the place where the injury occurred;

b) the place where the conduct causing the injury occurred;

c) the domicile, nationality, place of incorporation, and place of business of the parties; and

d) the place where the relationship of the parties is centered.

Although all of these contacts are relevant, in another case in which tortious interference with a distributorship was alleged, the place of injury was given presumptive import absent another more significant relation. *See DP Service, Inc. v. AM International*, 508 F.Supp. 162, 164–65 (N.D.Ill. 1981). In this case the alleged injury occurred in the distributor's former territory, the middle section of Tennessee, where the relation of the parties was also centered. The defendant is licensed to do business in Tennessee, and the plaintiff's distributorship territory is in Tennessee. Accordingly, the Court will apply Tennessee law to the plaintiff's tort claims.

*Count IV: Repurchase of Inventory*

■ In Count IV of its complaint, Chilton alleges that Omark must repurchase Chilton's inventory pursuant to Tenn.Code Ann. § 47–19–102(a). That section reads as follows:

**47–19–102. *Retailer's right to have inventory repurchased.***—(a) Whenever any retailer enters into a franchise agreement, evidenced by a written contract, with a wholesaler, manufacturer or distributor wherein the retailer agrees to maintain an inventory and the contract is

terminated, then the wholesaler, manufacturer or distributor shall repurchase the inventory as provided in this chapter. The manufacturer, wholesaler, or distributor shall repurchase inventory as provided in this chapter when the inventory has become obsolete on termination of the contract.

At the outset, the Court observes that this is a contract claim subject to the law of Oregon, not Tennessee. The distributorship agreement provides that construction of its terms must be pursuant to Oregon law. Further, the agreement expressly reserves to Omark the option of repurchasing Chilton's inventory if either party terminates the contract.

> Distributor gives and grants to OMARK the option to repurchase all products, parts and accessories then in the possession of Distributor at the prices originally paid by Distributor effective upon the date of termination or notice of termination, whichever shall first appear.

Agreement at ¶ 12. Hence, the terms of the agreement free Omark from any obligation to purchase Chilton's inventory. Plaintiff has not alleged that this clause was for any reason unenforceable under the law of Oregon. Therefore, dismissal of this claim is appropriate.

Even if Tennessee law applied to this claim, relief available to this plaintiff under § 47–19–102(a) would be dubious at best. The statute provides relief to retailers who have a written franchise agreement, not to distributors who have a distribution agreement with a manufacturer. Plaintiff has cited neither legislative history nor any Tennessee case to support this extension of the statute. Distributors are not included in the statutory definition of retailers; in fact, the statute distinguishes them.[12] Further, the agreement itself distinguishes the two roles by permitting the distributor Chilton to appoint retail dealers, like Baileys.[13] Finally, the contract explicitly explains how the parties intended to dispose of inventory remaining after the relationship was terminated. Whether Oregon or Tennessee law was applied in this instance, Chilton could allege no set of facts which would entitle it to relief.

For these reasons, plaintiff's claim under Tenn.Code Ann. § 47–19–102(a) in Count IV is dismissed.

### Count V: Breach of Implied Covenant of Good Faith

In Count V, plaintiff alleges that its termination breached an implied covenant of good faith and was therefore unlawful. Omark's brief characterizes Count V as a claim in contract and seeks to apply Oregon law. Chilton's brief characterizes Count V as a tort claim and seeks to apply Tennessee law. In one sense, the issue has elements of both tort and contract claims, because one way of framing the issue is to ask whether a breach of contract can create a cause of action in tort for wrongful termination of a distributorship. Given that the conflicts question is being addressed in the context of a motion to dismiss, it is appropriate for the Court to examine the complaint itself and to see how Chilton first defined its claim. Count V makes specific reference to neither state's law. The gravamen of the claim is that Chilton's termination for its failure to participate in an illegal act was a breach of Omark's contractual obligation to act in good faith. Chilton alleges that the termination breached both the implied covenant of good faith and the terms of the agreement itself.[14] Hence, plaintiff's own language lends itself to a contractual charac-

---

12. *See* § 47–19–101(5). The definition of "retailer" in the statute is confined to sellers of particular products, none of which were sold by Chilton. The statute explains that a franchise agreement subject to its terms may be created between a distributor and a retailer, thus distinguishing these roles. Defendant observes that the distributorship agreement confers only distributorship status on the plaintiff and neither creates a franchise relation nor makes Chilton a retailer. Defendant's Memorandum of Authorities in Support of Motion to Partially Dismiss [hereinafter "Defendant's Memorandum"] at 3–4.

13. Complaint, Exhibit A at ¶ 3.

14. Complaint at Count V, ¶ 14–15.

terization of its claim, and Oregon law applies.

Under Oregon law, contracts of indefinite duration are generally terminable at will. *Anderson v. Waco Scaffold & Equipment Co.*, 259 Or. 100, 485 P.2d 1091 (1971); *Doolittle v. Pacific Coast Safe & Vault Works*, 79 Or. 498, 154 P. 753 (1916). The motives of a party who terminates an at will contract are irrelevant. *Estey & Associates, Inc. v. McCulloch Corp.*, 663 F.Supp. 167 (D.Or.1986); *Bliss v. Southern Pacific Co.*, 212 Or. 634, 321 P.2d 324 (1958). Commercial economics require the Court to enforce the voluntary agreement unless an overpowering rule of public policy would render the agreement illegal or unenforceable. *Id.*, 321 P.2d at 330.

Oregon has carved out exceptions to the at-will doctrine in the employment context. In such cases, termination of an at-will contract may give rise to a tortious cause of action for wrongful discharge. Termination may thwart an important public interest if it penalizes an employee for fulfilling a societal obligation, *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (jury duty), or for refusal to commit an illegal act, *Delaney v. Taco Time Int'l*, 297 Or. 10, 681 P.2d 114 (1984) (libel). Termination that retaliates against the employee for pursuing a public statutory right directly related to plaintiff's role as an employee may also be wrongful. *See Holien v. Sears Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292 (1984) (sexual harassment); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978) (workers' compensation). These exceptions to the general rule are analogous to the instant case in which plaintiff alleges that its distribution contract was terminated because of plaintiff's refusal to commit an illegal act. Two recent Oregon decisions refute this analysis, however.

■ In *Estey & Associates v. McCulloch Corp.*, 663 F.Supp. 167 (D.Or.1986), a distributor sued a manufacturer for violations of federal antitrust laws and various state laws, including bad faith termination of an at-will contract. The court applied the Oregon at-will doctrine and granted summary judgment for the manufacturer on that claim. The court observed:

> The claim for bad faith termination fails. Plaintiff cannot point to an Oregon case in which a bad faith termination of an at will contract supports liability. Indeed, to allow such a claim would emasculate the termination at will doctrine, and must be rejected. *Id.* at 171.

The Oregon Court of Appeals has explicitly refused to extend the exceptions to the at will doctrine created in employment cases to other kinds of at will contracts. In *Lloyd Lions Club of Portland v. Int'l Ass'n of Lions Clubs*, 81 Or.App. 151, 724 P.2d 887 (1986), a local Lions Club charter admitted female members and was terminated in violation of Oregon's Public Accommodation Act. Although the termination clearly violated the Act, it was permissible because the charter gave the parent club the right to terminate the charter at will. The court expressly declined to apply *Nees* and its progeny from the wrongful discharge to the breach of contract context and emphasized that a party cannot "breach a contract by terminating it, *for good reasons or bad,* if the contract expressly permits the party to terminate it at will." *Id.* at 893 (emphasis added).

Because Oregon courts do not recognize that breach of an at-will contract creates an action for bad faith termination, Count V is dismissed.

### Count VI: Interference with Prospective Business Relations

■ Count VI alleges that termination of the distributorship agreement interfered with Chilton's future sales to Baileys and therefore constitutes malicious interference with prospective business relations. Because this cause of action lies in tort, Tennessee law applies. Tennessee has codified the common law tort of inducement to breach contracts and also has substantial case law on interference with existing business relations. *See* Tenn.Code Ann. § 47–50–109; *Dorsett Carpet v. Whitt Tile & Marble Distrib. Co.*, 734 S.W.2d 322 (Tenn.1987); *Carruthers Ready–Mix Inc.*

*v. Cement Masons Local Union No. 520,* 779 F.2d 320, 323–24 (6th Cir.1985). But Tennessee has not developed any case law concerning interference with *prospective* business relations. *See Cesnik v. Chrysler Corp.,* 490 F.Supp. 859, 874 (M.D. Tenn. 1980); *cf. Hicks v. Metro Government of Nashville and Davidson Co.,* No. 86–49–II, 1986 WL 10885 (Tenn.Ct.App. Oct. 3, 1986) (unreported) (assuming arguendo that the tort was recognized in Tennessee, plaintiff nonetheless failed to state a claim.)

Because Tennessee has not recognized the tort of interference with prospective business relations, Count VI is dismissed.

### *Count VII: Equitable Recoupment*

■ Count VII of the complaint alleges that Chilton was entitled to a reasonable period of time prior to termination for recoupment of its investment. This is a claim in contract, and the parties agree that Oregon law applies.[15] Equitable recoupment permits distributors that are terminated under an at-will contract to recover their expenditures before the termination takes effect. *See Estey,* 663 F.Supp. at 171–172 (D. Or.1986). In the one case to address the issue, the district court flatly stated that Oregon recognizes no such doctrine. *Id.* Therefore, Count VII is dismissed.

### *Count VIII: The Tennessee Consumer Practices Act*

■ In Count VIII, Chilton alleges that Omark's act of terminating the distributorship constitutes an unfair and deceptive trade practice in violation of the Tennessee Consumer Protection Act, Tenn.Code Ann. §§ 47–18–101, *et seq.* Chilton seeks treble damages under § 47–18–109.

The Tennessee Court of Appeals[16] examined the language and the legislative intent of the Act in *Colyer v. Trew,* 1982 WL 4419 (Tenn.Ct.App.1982) (unreported). According to *Colyer,* corporations in the position of Chilton lack standing to sue for damages under the Act. The legislature intended to confine damage suits to ordinary consumers and not to permit corporations to attack unfair competition with suits for treble damages. *Id.* at 5; *American Bldg. Co. v. White,* 640 S.W.2d 569, 575 (Tenn.Ct.App. 1982) (denied damages to corporate plaintiff under the Act). Corporations may sue for injunctive relief under the Act, however. *Coyler* at 7–8. Count VIII does not seek to enjoin Omark's acts but only to collect damages. Accordingly, Count VIII is dismissed for lack of standing.

### *Conclusion*

For the reasons stated above, defendant's motion for partial dismissal is granted.

---

**15.** *See* Defendant's Memorandum at 9–10; Plaintiff's Memorandum in Opposition to Motion to Partially Dismiss at 13–14.

**16.** Absent a decision from the Tennessee Supreme Court, decisions of the State's intermediate court are binding here. *See Wieczorek v. Volkswagenwerk, A.G.,* 731 F.2d 309 (6th Cir. 1984).