Argued and submitted July 18, affirmed in part and reversed in part September 10, Lloyd Lions Club's reconsideration allowed by order November 24, International Association's reconsideration denied November 24, International Association's petition for review allowed December 30, 1986 (302 Or 460)

LLOYD LIONS CLUB OF PORTLAND et al,
*Respondents,*

*v.*

The INTERNATIONAL ASSOCIATION
OF LIONS CLUBS,
*Appellant,*

(A8206-03941; CA A36245)

724 P2d 887

William H. Walters, Portland, argued the cause for appellant. With him on the briefs were William B. Crow and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Marla J. McGeorge, Portland, argued the cause for respondents. With her on the brief were Allen T. Murphy, Jr. and Richardson, Murphy & Lawrence, Portland.

Diane Spies and Diane Spies & Associates, P.C., and Timothy Grabe and Rieke, Geil & Savage, P.C., Portland, filed a brief *amicus curiae* for the Conference of Private Organizations and Benevolent and Protective Order of the Elks of the United States of America.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Linda DeVries Grimms, Assistant Attorney General, Salem, filed a brief *amicus curiae* for Department of Justice and Bureau of Labor and Industries.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff Lloyd Lions Club of Portland admitted plaintiffs Hopper and Greenough, both women,[1] as members. Defendant International Association of Lions Clubs, which restricts membership to males, responded by terminating the charter of Lloyd Lions Club. Plaintiffs brought this action, alleging in separate claims that defendant (1) violated the Public Accommodation Act, ORS 30.670 to 30.685 (Act), proscribing discrimination in places of public accommodation; (2) breached defendant's contract (*i.e.,* the charter itself) with Lloyd Lions Club; and (3) interfered with the individual plaintiffs' business relationships. The trial court ruled in plaintiffs' favor on each of their claims and awarded general and punitive damages as well as mandatory relief. Defendant appeals, and we affirm in part and reverse in part.

ORS 30.670 provides:

> "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin."

ORS 30.675 provides:

> "(1)   A place of public accommodation, subject to the exclusion in subsection (2) of this section, means any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements or otherwise.

> "(2)   However, a place of public accommodation does not include any institution, bona fide club or place of accommodation which is in its nature distinctly private."

In *Schwenk v. Boy Scouts of America,* 275 Or 327, 551 P2d 465 (1976), the Supreme Court construed those provisions as prohibiting discrimination only "by *business or commercial enterprises* which offer goods or services to the public." 275 Or at 334. (Emphasis in original.) Defendant's

---

[1] The trial court dismissed the action as to plaintiff Mulflur and as to the individual defendants. The dismissals are not challenged. The court entered an amended judgment to correct nonsubstantive problems. Our references to "the judgment" mean the amended judgment. Timely notices of appeal were taken from both the original and amended judgments.

principal contention on appeal is that the Act does not apply to it, because it is principally a community service organization and is not a business or commercial enterprise subject to the Act. Plaintiffs and the state *amici* respond that defendant comes within the *Schwenk* test and the language of the Act. They argue that, although defendant's principal function is the performance of community and benevolent services, it also "is a business or commercial enterprise because it 'sells' memberships to the public," and membership in turn produces and has the purpose of providing the "advantages" and "privileges" of business contacts and advancement along with other benefits. Plaintiffs maintain that defendant does not come within the "distinctly private" exception of ORS 30.675(2), because it places heavy emphasis on recruitment of members and unlimited expansion of its membership and, although admission to membership is ostensibly subject to screening criteria and procedures, the reality is that defendant and its member clubs are unselective in their acceptance of male applicants.

■    The trial court agreed, and it found as facts:

"Defendant International claims that its membership selection criteria are 'highly selective.' It is true that the membership application process has the appearance of being elaborate, formal and structured. But the application process is not selective and almost all men who apply are admitted to membership.

"As stated previously, defendant's emphasis on membership recruitment is pervasive and incessant. Although there is no public advertising for new members, there is constant encouragement of members to solicit and recruit new members. Membership 'kits' are provided to assist in the process. There are constant recruiting drives, the emphases of which are to add more and more new members. Awards are given in recognition of successful recruitment. Local clubs are encouraged to sponsor recruitment contests for new members, and to award pens, plaques and prizes to the winners who recruit the most new members, along with roses for the wives of the winning team: 'Only members of the winning team get the dinner and roses treatment.'

"Local clubs are advised and encouraged to 'sell' memberships. Recruiters are advised to contact business associates, to contact 'new businesses in your area' and to 'sell' them on the advantages of membership. * * *

"'* * * * *

"There is a 'definite business connection' in being a Lion. The opportunity to meet new business people is a strong 'selling point' in recruiting. * * *'"

The court also found that there are 216 Lions Clubs in Oregon with a total membership of 7,700.[2]

The arguments of plaintiff and the state *amici* and the opinion of the trial court are in large part based on and follow the Minnesota Supreme Court's decision in *United States Jaycees v. McClure,* 305 NW2d 764 (Minn 1981), which held that the national Jaycees organization's revocation of the charter of a local chapter which had admitted women violated

---

[2] Defendant argues, for a number of reasons, that we should review the findings *de novo.* Of the proffered reasons, the only one which requires extensive discussion is defendant's contention that *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 US 485, 104 S Ct 1949, 80 L Ed 2d 502 (1984), mandates *de novo* review in connection with defendant's First Amendment arguments. The issue in *Bose* was whether the United States Court of Appeals erred by conducting *de novo* appellate review of the trial court's finding that the defendant had acted with "actual malice" in a defamation case to which the rule of *New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), applied. The Court held that *de novo* review was necessary. We understand the *de novo* review of "constitutional facts" rule formulated in *Bose* and earlier cases to apply only to findings which form the line of demarcation between protected speech and expression which the First Amendment does not protect (*e.g.,* libel, obscenity, incitement to riot), or to findings which constitute a constitutional test (*e.g.,* "actual malice" in *New York Times* defamation cases; "appeal to prurient interests" in obscenity cases), as distinct from the amalgam of other findings which are made in cases where First Amendment rights are involved. *See Bose Corp. v. Consumers Union of U.S., Inc., supra,* 466 US at 514, n 31.

The critical disputed findings of the trial judge in this case are that defendant is in the business of selling memberships and that its membership criteria for men are unselective. Those findings do not touch upon whether—and plaintiffs do not claim that—defendant's activities fall outside the First Amendment's protection. The First Amendment issue is whether the state has a sufficient compelling interest to regulate defendant's protected activities in the way that it has. Moreover, the findings do not relate to constitutional tests or facts. They relate to whether defendant is subject to the Act; they have no independent bearing on whether the Act impermissibly invades defendant's First Amendment rights. *De novo* review of the trial court's findings is not required here in connection with the federal questions.

Defendant urges that we adopt the *Bose de novo* review approach in connection with its state constitutional arguments. Article VII, section 3, of the Oregon Constitution does not permit us to do so.

Defendant also argues that we should review *de novo,* because plaintiffs sought and obtained equitable relief as well as compensatory and punitive damages. We disagree. The primary relief plaintiffs sought through their claim for violation of the Act was legal rather than equitable. The legal or equitable characterization of their other claims is immaterial to the question, because our dispositions of those claims do not involve evidentiary or factual review.

the Minnesota analog of the Oregon Act. *See also Rotary Club of Duarte v. Board of Directors,* 178 Cal App 3d 1035, 224 Cal Rptr 213 (1986), which was decided after the trial court's decision here, and which reached the same conclusion under similar facts and for similar reasons with respect to the analogous California statute.

The court said in *McClure:*

"We address first whether the national organization is a *business.* The national organization urges this court to draw a distinction between an organization's internal activities (e.g., membership dues) and its external activities (e.g., inviting the public to participate in the organization and the activities it conducts). With this distinction the national organization contends that membership in it is equivalent to ownership of the organization; it then concludes that ownership, or a share of ownership of an organization, is beyond the scope of Minn.Stat. § 363.01(18) (1980), for that subdivision concerns only the goods and privileges offered or sold to the public by a business, and does not concern its ownership.

"To be substantiated, the analogy would have to be borne out, in the record, by the way the national organization regards its current and prospective members, i.e. as its present and potential owners, rather than as its customers. The record before us reveals a national organization that regards its members more as customers than as owners. * * *

"The product being sold is membership in an organization whose aim is the advancement of its members. * * *

"By virtue of its sale of individual memberships (with the accompanying goods and privileges) the national organization is a business.

"* * * * *

"* * * The record before us reveals a national organization that strives for growth, especially in 'individual memberships'; it is unselective in those to whom it sells its memberships; selectiveness occurs only in the privileges and benefits it accords to those holding one kind of membership rather than another." 305 NW 2d at 768-71. (Emphasis in original.)

■■ The Minnesota court's reasoning is persuasive, and we agree with plaintiffs, the state *amici* and the trial court that similar reasoning is decisive here. In the light of the trial judge's findings, we conclude that defendant is a business

which sells memberships and substantial concomitant business advantages to the male public throughout the state. Defendant is not a "private" organization. It is open to virtually all, except women. Its revocation of the Lloyd club's charter was an action aimed at denying its business product and services to a segment of the population on the basis of sex.

Defendant makes several arguments for the proposition that the Act does not apply to it. Many of those arguments question the trial court's findings or attempt to distinguish this case factually from *United States Jaycees v. McClure, supra,* and *Rotary Club of Duarte v. Board of Directors, supra.* Those arguments are based entirely or in the main on the premise that we have authority to review *de novo.* We do not. *See* note 2, *supra.*

Two of defendant's arguments which do not rest on that incorrect premise require comment. Defendant argues first that the trial court erred by "refusing to apply the law of this state." The referents of that argument are the trial judge's suggestion in his opinion that *Schwenk v. Boy Scouts of America, supra,* construed the Act too narrowly and the articulation of his own view of how the Act should be applied.[3] Having done that, however, the trial judge proceeded to decide the case in accordance with the principles announced in *Schwenk.* His reservations about the Supreme Court's decision did not prevent him from following it and did not result in error.

Defendant also argues that, because it is a nonprofit organization, it follows *ipso facto* that it cannot be a business or commercial enterprise and therefore cannot be subject to the Act as construed in *Schwenk.* We disagree. There is no automatic equivalency between an organization's overriding noncommercial character and the nature of specific activities it undertakes which are independent of its noncommercial activities. The fact that defendant's primary purpose is to render benevolent services in the community does not mean that its active promotion and sale of memberships, with the inducement and the consequence of business advantages for members, cannot be and is not a business or commercial

---

expressed in Judge O'Connell's cogent dissent in that case. 275 Or at 337.

activity. Carried to its extreme, defendant's argument would allow charitable organizations to exclude persons from events such as public bake sales on the basis of race, sex, religion or the other considerations forbidden by the Act. We hold that defendant is subject to the Act and that it has violated it.

■       Defendant contends that the Act's application to it would violate its and its members' right to free association, as well as their enjoyment of communication and related rights with associates of their choosing, under the Oregon Constitution (citing Or Const, Art I, §§ 3, 8, 26 and 33) and under the First Amendment.[4] Defendant's federal arguments are answered by *Roberts v. United States Jaycees,* 468 US 609, 104 S Ct 3244, 82 L Ed 2d 462 (1984). In that case, arising out of the same controversy which the Minnesota court addressed in *United States Jaycees v. McClure, supra,* the United States Supreme Court held that Minnesota had compelling state interests justifying the imposition of the restrictions on the Jaycees' association and communication rights. Defendant's efforts to distinguish this case from *Roberts* again turn on asserted factual distinctions which, in view of the trial court's findings, do not exist.

Neither defendant's arguments nor those of the *amicus* Conference of Private Organizations offer any convincing reason for a different Oregon constitutional conclusion. We note that in *Roberts,* where the issue of freedom of expression was more centrally involved than it is here, *see* note 4, *supra,* the Court reasoned that the state regulation was not directed at the "content or impact of the organization's speech," 468 US at 628, and, more generally:

> "On its face, the Minnesota Act does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria. See also *infra,* at 629-631. Nor does the Jaycees contend that

[4] It is unclear to us whether defendant claims that the Act infringes on its communication rights *per se,* or whether its references to the speech provisions of the constitutions are designed only to identify a source of a right to freedom of association in the Oregon Constitution. The brief of the *amicus* Conference of Private Organizations is concerned principally with the issue of freedom of expression under the state constitution. We will operate on the assumption that it is defendant's intention to raise the freedom of expression as well as the freedom of association issues.

the Act has been applied in this case for the purpose of hampering the organization's ability to express its views. Instead, as the Minnesota Supreme Court explained [in *United States Jaycees v. McClure, supra*], the Act reflects the State's strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services. See 305 N. W. 2d, at 766-768. That goal, which is unrelated to the suppression of expression, plainly serves compelling state interests of the highest order." 468 US at 623-24.

That reasoning is entirely consistent with the Oregon appellate courts' Article I, section 8, holdings. *See State v. Robertson,* 293 Or 402, 649 P2d 569 (1982); *State v. Harrington,* 67 Or App 608, 680 P2d 666, *rev den* 297 Or 547 (1984). The Act is not directed at the regulation of speech or its substance. We reject defendant's constitutional arguments.

Defendant next argues that the court erred by awarding each of the plaintiffs "nominal" damages of $500. Defendant argues that the award was excessive because, as a matter of law, $500 is not a nominal amount. Defendant bases its argument on the fact that, in its opinion, the court used the word "nominal" to describe the damages. However, the judgment uses the term "general damages," and that is the correct term. *See State v. Swain/Goldsmith,* 267 Or 527, 517 P2d 684 (1974). Plaintiffs sought actual damages for actual alleged injuries, and the court awarded them.[5] Defendant's argument is a word game and is without merit.

Defendant also argues that the court erred by awarding $1,000 in punitive damages to each plaintiff. ORS 30.680 specifically authorizes the imposition of punitive damages for violations of the Act. Defendant nevertheless maintains that it was not subject to such damages here, because, *inter alia,* "[p]unitive damages cannot be imposed where the defendant could not have known beforehand that his action was legally culpable" and "defendant could not reasonably anticipate that the trial court * * * would rule that defendant was a commercial enterprise." Defendant relies on *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), where the plaintiff brought a

---

[5] ORS 30.680 allows plaintiffs to recover "compensatory and punitive damages" for violations of the Act. It does not authorize nominal damages.

wrongful discharge action against the employer after she was fired for performing jury duty. The court said:

> "Until the trial court's ruling in this case and our affirmance there was no judicial decision that an employer was liable if he discharged an employee because she served jury duty. As we earlier stated, the general rule known to employers and lawyers alike is that absent contract or statute, an employer can discharge an employee for any reason without incurring liability.
>
> "If we held that punitive damages could be awarded in the present case we would be permitting the jury to punish defendants for conduct which they could not have determined beforehand was even actionable. * * *
>
> "We have shared the common knowledge of the community that such practices as turning back odometers, tortious repossession of automobiles and injuries by drunken drivers were common and there was a known need for deterrence. We have no knowledge whether the practice of discharging employees for serving on juries is common or whether it will continue after we have declared such a discharge to be tortious." 272 Or at 220-21.

We are not persuaded by defendant's effort to analogize this case to *Nees.* In that case, the defendants were held liable for conduct which, before they were sued, had never been made redressable by the legislature or the courts. Here, defendant violated an existing statute. Its premise is that it did not know beforehand that it was subject to the Act. It phrases its argument in terms of its being unaware that it had acted unlawfully; reduced to essentials, however, defendant's position is that violators of the Act should not be subject to its sanctions if they offer defenses which they regard as meritorious but the courts do not. We disagree, and we hold that the awards of punitive damages were proper.

■ Defendant's remaining assignments challenge the court's judgment for plaintiffs on their contract and interference with business relationships claims. The relief the court gave plaintiffs on the latter claim—an order that the charter be reinstated—was also accorded them on their claim for violation of the Act. We have affirmed the judgment insofar as it pertains to that claim, and we therefore decline to consider defendant's assignment challenging the redundant portion of the judgment adjudicating the interference claim.

However, we must address defendant's assignment relating to the contract claim, because the relief given plaintiffs under it differed somewhat from the relief that they obtained on their other claims.

The theory of plaintiffs' contract claim and of the trial court's opinion was, in the words of the latter, that

"* * * defendant breached its contract with plaintiffs when it revoked plaintiff Lloyd Lions' charter for a reason that under Oregon law is socially unacceptable. * * *"

Plaintiffs and the court followed the reasoning of *Nees v. Hocks, supra,* and other wrongful discharge cases. Defendant assails the aptness of that authority and maintains that *Nees* and its progeny cannot be extended from the wrongful discharge to the breach of contract context. In our view, the contract claim fails for a more basic reason. Plaintiffs alleged:

"XXII.

"An enforceable contract, in the form of a charter, was in effect between the Plaintiff Lloyd Lions Club and Defendant IALC.

"XXIII.

"Under said charter, Defendant IALC had the right to terminate the charter at will.

"XXIV.

"Defendant IALC exercised this right; however, it did so solely because of the sex of Plaintiff Lloyd Lions Club's new admittees * * *."

We do not agree that defendant's motives for exercising its "at will" right to terminate the charter give rise to a breach of the charter. The revocation of the charter violated the Act, because that action was the vehicle by which defendant withdrew its commercial product and services from the individual plaintiffs on the basis of their sex. However, we do not agree that a party can breach a contract by terminating it, for good reasons or bad, if the contract expressly permits the party to terminate it at will. The judgment for plaintiffs on their contract claim was error.

Paragraph 4 of the amended judgment is stricken; the amended judgment is otherwise affirmed.