**STATE FARM FIRE AND CASUALTY CO., Plaintiff,**

v.

**Ruth GEARY, et al., Defendants.**

**No. C–86–5107 MHP.**

United States District Court, N.D. California.

Sept. 15, 1987.

James M. Harris, York, Buresh & Kaplan, Berkeley, Cal., for plaintiff.

C. Scott Bridges, Law Offices of Eric P. Schnurmacher, Oakland, Cal., for defendants.

ORDER

PATEL, District Judge.

Plaintiff State Farm filed this action in March 1986 seeking a declaratory judgment that it has no obligation to indemnify or to defend the defendant Geary in an underlying state court action and to recover the value of the defense so far provided under a reservation of rights. This case is now before the court on cross-motions for summary judgment and defendant's motion to amend her counterclaim to add two parties. For the reasons set forth below, partial summary judgment is granted to the plaintiff and denied to the defendant. In addition, defendant's motion to amend the complaint is denied.

*Facts*

A. *The Underlying Claims*

Defendant's father, Bert Geary, with Wolfgang Morandell ("Morandell"), formed Wolfgang Morandell Company, Inc. ("WMC" or "the company"), where defendant was employed from 1981–1984. After her father died in 1982, defendant purchased from his estate a 49.99 percent interest in the stock of WMC, which represented her father's entire interest in the company. Thereafter, at Morandell's request, defendant in 1983 signed a personal guarantee on a $650,000 line of credit from Pacific Bank, N.A. ("Pacific") for WMC. In late 1984, defendant became dissatisfied with the information she was receiving regarding the financial conduct of the company and so cancelled the guarantee to Pacific and began acrimonious and unsuccessful negotiations to sell her interest in WMC to Morandell. During this period the defendant was fired from her position as a WMC employee and voted out of office as company secretary. On December 28, 1984, Pacific froze WMC's line of credit.

On June 7, 1985, defendant sent her attorney, C. Scott Bridges ("Bridges"), accompanied by a video and recording crew to the WMC offices. Bridges arrived after the completion of a shareholders' meeting and, on defendant's authorization, demanded access to corporate records, books and financial records as well as to inventory for the purpose of inspection. Morandell denied access to Bridges and called the police to have him removed from the premises.

On June 13, 1985, WMC filed a complaint in San Mateo Superior Court against defendant and her attorneys, among others, to enjoin their further trespass on WMC premises and for damages caused by interference with prospective business relationships, all arising from the June 7 incident. Defendant cross-claimed against Morandell and his wife (who together hold a controlling interest in the company), and the Morandells in turn cross-claimed against defendant and her attorneys alleging breach of contract, interference with advantageous economic relations and intentional infliction of emotional distress, all arising out of defendant's cancellation of her personal guarantee on the Pacific line of credit.

This suit between defendant and the Morandells, as well as two other related suits not involving the defendant, are pending in a coordinated action ("the underlying litigation") before a California superior court. With respect to that action, defendant has demanded indemnification and defense from the plaintiff, under several different insurance policies.

### B. *Insurance and Coverage Claims*

Defendant owns several different State Farm policies which include insurance for her home, her car, her Los Angeles condominium, a standard homeowner's policy and a personal liability umbrella policy. Defendant also claims that State Farm policies purchased by WMC insure her in her capacity as an officer and director of that company. Only plaintiff's liability under the homeowner's and personal liability insurance policies is at issue on these cross-motions for partial summary judgment.[1]

By letter of August 12, 1985, Eric P. Schnurmacher, a partner in the firm in which Bridges is an associate, tendered the complaint in the underlying suit to State Farm and requested that plaintiff retain another attorney, Richard LemMon, to represent the defendant. Plaintiff, believing

that coverage was problematic, repeatedly requested a statement from the defendant. No statement was forthcoming, but in December, LemMon wrote to inform plaintiff that no statement would be forthcoming because coverage was clear. Without further correspondence, by letter of December 18, 1985, plaintiff agreed to undertake the defense of the underlying action under an express reservation of the right later to deny coverage.

The letter agreeing to undertake the defense stated that plaintiff had referred the case to the law firm of Kincaid, Gianunzio, Caudle and Hubert, which would represent the defendant's interests exclusively. However, the letter also acknowledged that the reservation of rights created a conflict of interest between the plaintiff and defendant and informed defendant of her option to retain an attorney of her choice at plaintiff's expense, rather than accept the representation of Kincaid Gianunzio. Defendant chose to retain both LemMon and Schnurmacher and promptly so notified the plaintiff.

The reservation of rights, as outlined in the December 18 letter, was based in part on specific exclusions for business-related suits and injuries, which were unrelated to the determination in the underlying litigation and in part on exclusion for damages that are "the intended or expected results" of actions taken by the insured, an issue that would be central in the determination of the underlying litigation.

By letter of March 19, 1986, plaintiff withdrew its reservation of rights as to the issue of intentional or expected damages and simultaneously asserted the absence of conflict under the rule of *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984). Plaintiff refused to pay further for fees of defendant's chosen counsel. The letter asserted that plaintiff's representation of the defendant would continue, but

---

**1.** Although the defendant has failed to be entirely clear, ahe apparently moves this court to rule that she is entitled to coverage under either the homeowner's or personal liability policies. Coverage under other policies is not addressed in either party's papers. Plaintiff, however, is scheduled to file a final summary judgment motion to dispose of any remaining coverage issues by September 14, 1987.

by counsel of plaintiff's rather than defendant's choice.

This court has jurisdiction over these state law claims based on diversity of citizenship. Plaintiff filed this action for declaratory relief in August 1986. Defendant answered and asserted related counterclaims. This order will address the rights and liabilities of the parties with respect to coverage under the homeowner's and personal liability policies. All other coverage issues are preserved.

### C. Representations of Plaintiff's Agents as to Coverage

In addition, this order will address plaintiff's motion to amend the counterclaim to join two parties to this action. Defendant moves to join Curt Cooper and Kathy Strah as third party defendants, charging them with negligence and/or misrepresentation. Cooper was defendant's State Farm agent and Strah is his assistant. Defendant alleges that Cooper and Strah advised her that she was covered for precisely the type of suit involved in the underlying litigation and failed to call her attention to any limitations on coverage. Defendant allegedly relied on these representations and thus failed to purchase additional coverage to protect her against the losses represented by the underlying suit. In the event that plaintiff disclaims responsibility for the acts of its agents, defendant prays for personal recovery against Cooper and Strah. *See* Proposed First Amended Answer to Complaint at fourth counterclaim.

### Discussion

### I. Cross–Motions for Summary Judgment

■ Summary judgment is appropriate only if the court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried. *See Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 n. 3 (9th Cir.1981); *DiSandro v. Makahuena*

*Corp.,* 588 F.Supp. 889, 892 (D.Haw.1984). This order will dispose of the issue of liability under the homeowner's and personal liability policies.

There is no dispute as to the material facts as outlined above, nor is there any dispute as to the existence of the exclusions to coverage included in the homeowner's and personal liability policies.

### A. Liability of State Farm Under the Homeowner's Policy

Defendant does not seriously contest plaintiff's argument that the business pursuits exclusion in the homeowner's policy precludes any obligation to defend or indemnify defendant in the underlying litigation. That exclusion provides:

> Coverage L [liability] and Coverage M [medical payments] do not apply to bodily injury or property damage arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply to activities which are ordinarily incident to non-business pursuits.

Such an exclusion is standard in homeowners policies and has consistently been upheld as clear and unambiguous by the California courts. *E.g., Crane v. State Farm Fire and Casualty Co.,* 5 Cal.3d 112, 115–16, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971); *Fire Ins. Exch. v. Jiminez,* 184 Cal.App.3d 437, 440–43, 229 Cal.Rptr. 83 (1986); *State Farm Fire and Casualty v. Drasin,* 152 Cal.App.3d 864, 869–70, 199 Cal.Rptr. 749 (1984).

■ The applicability of the business pursuits exclusion is clear in this case. A business pursuit has been defined as a regular activity motivated by profit or gain, including part-time or supplemental income projects. *Drasin,* 152 Cal.App.3d at 870, 199 Cal.Rptr. 749. Defendant was undoubtedly motivated by the prospect of profit—or more accurately, by the desire to avoid losses, which is the opposite side of the same coin—when she terminated the personal guarantee on the Pacific line of credit and when she authorized her attor-

ney Bridges to appear at the WMC shareholders' meeting and to demand the right of inspection. This conduct, which gave rise to the claims in the underlying litigation, is excluded from coverage as a matter of law.

■ Further, because the validity of the business pursuits exception was never seriously in doubt, the defendant had no reasonable expectation of defense or indemnification from the plaintiff under the homeowner's policy. Where there is no potential coverage under a contract of insurance there is no duty to undertake a defense. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 274–75, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Jiminez*, 184 Cal.App.3d at 441, 229 Cal.Rptr. 83. Similarly, where there is no duty to defend, there can be no bad faith refusal to defend or to provide *Cumis* counsel.

## B. *Liability Under the Personal Liability Policy*

■ Plaintiff argues that just as any liability to the defendant under the homeowner's policy is excluded under the business pursuits clause, any liability under the personal liability umbrella policy is excluded under the "business operations" clause. That clause provides:

> We will not provide coverage for a loss caused by your business operations unless underlying insurance listed on the declarations page provides coverage for the loss.

On the other hand, defendant argues that this exclusionary language is ambiguous and therefore should be construed narrowly in favor of coverage, particularly in view of the fact that the duty to defend is broader than the duty to indemnify. *Jiminez*, 184 Cal.App.3d at 441, 229 Cal.Rptr. 83; *see also Crane*, 5 Cal.3d at 115–16, 95 Cal.Rptr. 513, 485 P.2d 1129. Defendant then urges the court to look at the extent of the defendant's other coverage (home, auto, watercraft, etc.) and infer from the mere number of policies that the personal liability policy must be interpreted as excess coverage for all potential losses not otherwise covered.

In construing the language of the business operations clause the court recognizes that the rules of interpretation require that any ambiguity be resolved in favor of the insured and that the policy must be read as by a layman rather than as by an attorney or an expert. *Crane*, 5 Cal.3d at 115, 95 Cal.Rptr. 513, 485 P.2d 1129. This requires that any clause which purports to exclude coverage be "conspicuous, plain and clear." *Id.* This court, however, will not strain to find ambiguity where none exists. *See Pacific Employers Ins. Co. v. Maryland Casualty Co.*, 65 Cal.2d 318, 323, 54 Cal.Rptr. 385, 419 P.2d 641 (1966); *Highlands Ins. Co. v. Universal Underwriters Ins. Co.*, 92 Cal.App.3d 171, 175, 154 Cal.Rptr. 683 (1979).

Interpretation of the "business operations" exclusion appears to be one of first impression. Although the parties have failed to bring a case to the court's attention, the conclusion that coverage is plainly and unambiguously excluded is supported by the uncontroverted facts of the case. The court does not purport to define the outer limits of the business operations exclusion. But even if, as the defendant argues, the business operations exclusion should be more narrowly construed than the business pursuits exclusion, it cannot be so narrowly interpreted as to include coverage of the defendant in the underlying litigation. A mere lack of case law does not indicate ambiguity.

First, the exclusion for business operations is no less "conspicuous, plain and clear" than the exclusion for business pursuits in the homeowner's policy. Defendant has not alleged that it was hidden or relegated to fine print. In this regard, defendant's argument that the personal liability policy was to cover her in excess of all other insurance and on any type of claim is unavailing. Defendant has alleged no facts that would lead the court to conclude that there was a reasonable expectation of indemnification or defense in the underlying litigation under the terms of the personal liability policy.

At least with respect to the conduct complained of in the underlying litigation, the

business operations exclusion is clear and unambiguous. That conduct is so inextricably entwined with the defendant's employment, her financial investment, her position as a shareholder and director of WMC, that whatever the limitations on the import of the phrase "caused by your business operations," this language must at least be viewed as clearly excluding claims related to cancelling a guarantee on a business line of credit and exercising a claimed right of inspection. Neither of these acts can be classified as those of a "passive shareholder," arguments of the defendant to the contrary notwithstanding. If the clause does not encompass such conduct, it is narrow to the point of being devoid of meaning.

Second, despite the use of a different term, the plain meaning of "business operations" strikes the court as remarkably like "business pursuits." There is no reason to give the word "business" a different meaning in conjunction with the word "operations" from that with the word "pursuits." Therefore, the court will define "business" as activity engaged in for profit. "Operations," if accorded its generally accepted meaning, is the "doing or performing, especially of action." Webster's Third New International Dictionary, Definition 1a (1976). Under this interpretation, the business operations clause would exclude the very claims excluded under the business pursuits exception, i.e., all claims caused by any acts related to making a profit. No reasonable jury would find otherwise.

■ The policy underlying according exclusionary clauses narrow construction in favor of coverage applies only when the clause fails to be "conspicuous, plain and clear." It is only then that the insured can legitimately claim that his or her reasonable expectation of coverage has been disappointed, and that the ambiguity should be resolved against the insurer that drafted the contract. Where there is no ambiguity with respect to the particular claim asserted, there is no policy that would justify extending the reach of actual or potential coverage. California courts have recognized that when the rules of construction are used to extend coverage artificially beyond the reasonable expectations of the parties, it is ultimately the insured and other policyholders who bear the cost of the courts' intrusion on the right of the insurer to limit the liability it chooses to assume. *Hartford Fire Ins. Co. v. Superior Court*, 142 Cal.App.3d 406, 417, 191 Cal.Rptr. 37 (1983). In this case, business liability insurance, perhaps sold at a price corresponding to a greater risk, will not be construed to be part of the coverage contracted for in the personal liability umbrella policy.

This conclusion is made inescapable by the further provision in the business operations clause that excepts from business operation exclusion losses for which "underlying insurance listed on the declarations page provides coverage." Thus, had there been any underlying coverage for the type of loss represented by the underlying litigation, and had that coverage been declared, the personal liability umbrella policy would have provided excess insurance on the claim. The significance of the exception is that it demonstrates that defendant's many insurance contracts with State Farm were undertaken to prevent personal losses arising from private transactions, unrelated to a profit-making motivation.

■ Defendant's theory of estoppel is also insufficient to survive the motion for summary judgment. The declaration submitted by the defendant simply fails to allege conduct rising to the level of misrepresentation which would lead the defendant to believe that she was covered for business-related risks. Defendant has not alleged that she informed State Farm or her agent of her business activities and tried to obtain coverage for associated risks. In the absence of such allegations it is unreasonable to suggest that the umbrella policy "covers everything."

■ Because the court rules that there was, as a matter of law, no potential for coverage under either the homeowner's or personal liability policies, it follows that plaintiff could not have breached its duty to defend. Where there is no potential liability, there is no duty to defend. *Jimi-*

*nez,* 184 Cal.App.3d at 442, 229 Cal.Rptr. 83. As a result, it is not necessary to determine whether *Cumis* counsel was wrongfully withdrawn.

### II. Motion to Add Cross–Claims Against Additional Parties

█ Defendant seeks leave to amend her counterclaim to implead Curt Cooper and Kathy Strah. The motion is denied because the counterclaim is permissive rather than compulsory and the joinder of these parties is not supported by an independent basis for subject matter jurisdiction. The basis of the court's subject matter jurisdiction in the main action is diversity of citizenship. No federal question is stated against the proposed third-party defendants Cooper and Strah and the defendant has failed to allege diversity jurisdiction.

Rule 13(a) makes a counterclaim compulsory if it arises out of the transaction or occurrence that is the subject matter of the original claim and is made against an opposing party. Fed.R.Civ.P. 13(a). This counterclaim is not against an opposing party and no amount of reference by the defendant to omitted counterclaims or the joinder rules will make it compulsory. As a permissive counterclaim, it must be supported by independent grounds of federal jurisdiction. *See Anderson v. Central Point School Dist. No. 6,* 554 F.Supp. 600, 605 (D.Or.1982), *aff'd and remanded on other grounds,* 746 F.2d 505 (9th Cir.1984). *See also* 6 Wright and Miller, Federal Practice and Procedure 1422 (1979 & Supp.1986) and cases cited at n. 26 therein.

█ Even if the court has ancillary jurisdiction over the proposed counterclaim, leave to amend is denied because the motion is late. Trial is set for October 13, 1987. The action was filed one year ago. The delay in raising claims arising from facts which were uniquely within the defendant's knowledge is inexcusable and prejudicial to the plaintiff's case at this late stage of the litigation.

Accordingly, plaintiff's motion for partial summary judgment is granted, defendant's motion for summary judgment is denied and defendant's motion to amend the counterclaim is denied.

IT IS SO ORDERED.