Sandra BEYNON, Plaintiff
and Appellant,

v.

**ST. GEORGE–DIXIE LODGE # 1743, BE-
NEVOLENT & PROTECTIVE ORDER
OF ELKS, Defendant and Appellee.**

No. 910551.

Supreme Court of Utah.

April 14, 1993.

Rehearing Filed April 28, 1993.
Rehearing Denied May 13, 1993.
As Amended May 14, 1993.

Brian M. Barnard, John Pace, Salt Lake City, for plaintiff and appellant.

Glenn C. Hanni, David R. Nielson, Salt Lake City, for defendant and appellee.

R. Paul Van Dam, Atty. Gen., Frank D. Mylar, Asst. Atty. Gen., Salt Lake City, amicus for plaintiff and appellant.

Leonard J. Solfa, Jr., Mooseheart, IL, for Conpor, amicus for defendant and appellee.

· HALL, Chief Justice:

Plaintiff Sandra Beynon appeals from the order of the Fifth Judicial District Court granting summary judgment to defendant St. George–Dixie Lodge # 1742, Benevolent & Protective Order of Elks (the "Elks"). We reverse.

## I. FACTS

The facts for the most part are not in dispute. On August 7, 1987, Beynon applied for membership in the Elks Lodge in St. George, Utah. Beynon's membership application was denied solely because she is female.

The Elks is a nonprofit fraternal organization with criteria for membership selection.[1] Except for Beynon's application, no membership requests had been rejected for two and one-half years before this suit was filed. The Elks has approximately 1,056 members,[2] and no limit exists for the number of men who may join. In fact, men are actively recruited and encouraged to join.

The Elks' facilities include a restaurant/bar open to members, their families, and guests. Dinner is served three nights a week, and lunch is served daily, including a Sunday brunch. Nonmembers rent Elks facilities for weddings, parties, and business meetings. The only requirement for use of the facilities is that a member sponsor and attend the event.

The Elks has a St. George City business license and a private club liquor license under the Alcoholic Beverage Control Act (the "ABCA").[3] The liquor license allows the Elks to sell beer and alcohol to its members and their guests. The Elks sells more than $250,000 worth of alcoholic beverages annually.

The stated purpose of the Elks is to promote friendship and fraternal affiliation among its members and to engage in charitable work. The Elks annually sponsors numerous charitable and social activities in the St. George area. Each Tuesday night the Elks holds a private meeting where the members discuss business and perform certain rituals. The weekly meeting is the only Elks function from which nonmembers are barred.

Plaintiff brought suit against the Elks for declaratory and injunctive relief, claiming that denying her membership application violated her rights under the Utah Civil Rights Act (the "Act").[4] The parties filed cross-motions for summary judgment. The trial court rejected Beynon's claim and granted summary judgment for the Elks. In so ruling, the trial court found that the Elks did not qualify as an "enterprise regulated by the state" within the meaning of Utah Code Ann. § 13–7–2(c)(2) because it is a nonprofit organization and is not open to the general public.

Beynon appeals the trial court's decision dismissing her claim. Specifically, she argues that the Act prohibits the Elks from discriminating against women because (1) the Elks is an "enterprise regulated by the state," (2) the Elks is a "business establishment," and (3) the compelling state interest of eradicating discrimination outweighs any First Amendment freedom of association rights of the Elks.

## II. STANDARD OF REVIEW

██ A trial court should grant summary judgment only when no genuine issue of

---

1. Membership in the Lodge requires that one:
    (1) Be a male American citizen;
    (2) Be twenty-one years of age or older;
    (3) Have a belief in God;
    (4) Have never committed a crime;
    (5) Be a noncommunist;
    (6) Be sponsored by at least two members of the Lodge;
    (7) Be willing to uphold the Constitution and laws of the United States of America;
    (8) Be willing to pledge allegiance to the United States and salute the flag;
    (9) Be of good character; and
    (10) Promote fellowship among members of the organization.

2. Based on 1989 statistics.

3. *See* Utah Code Ann. §§ 32A–1–101 to –124, 32A–5–101 to –108.

4. Utah Code Ann. §§ 13–7–1 to –4.

material fact exists and the moving party is entitled to judgment as a matter of law.[5] In a case such as this, involving statutory construction, we accord the trial court's conclusions of law no deference but review them for correctness.[6]

## III. STATUTORY INTERPRETATION OF THE UTAH CIVIL RIGHTS ACT

Beynon claims that the trial court erred when it determined that the Act does not prohibit the Elks from denying her membership solely on the basis of gender. Hence, we must determine the proper interpretation of the Act in this case.

Section 13-7-3 of the Act states in pertinent part:

All persons within the jurisdiction of this state are free and equal and are entitled to full and equal accommodations, advantages, facilities, privileges, goods and services in *all business establishments and in all places of public accommodation, and by all enterprises regulated by the state of every kind whatsoever,* without discrimination on the basis of race, color, sex, religion, ancestry, or national origin.[7]

█ The parties agree that if the Elks qualifies as a business establishment, place of public accommodation, or state-regulated enterprise, then the Act applies and the Elks may not deny membership to Beynon on the basis of gender. Beynon argues that the Elks is both a business establishment and an enterprise regulated by the state. We conclude that the Elks is an enterprise regulated by the state under the Act. Because we so rule, we need not reach Beynon's argument that the Elks also qualifies as a business establishment.

### A. Enterprises Regulated by the State

Subsection 13-7-2(c) defines enterprises regulated by the state as:

(1) all institutions subject to regulation under the Utah Uniform Commercial Credit Code, Title 70B;

(2) *all places of business which sell beer to consumers or house a state liquor store, as permitted by the Alcoholic Beverage Control Act, Title 32A;*

(3) all insurers regulated by the Insurance Code, Title 31A; and

(4) all public utilities subject to regulation under the Public Utilities Act, Title 54.[8]

Under subsection 13-7-2(c)(2), an enterprise regulated by the state includes any place of business that sells beer to consumers or houses a state liquor store as regulated under Title 32A, Utah Code Annotated.[9] The trial court focused its decision on the "places of business" language of subsection 13-7-2(c)(2) and determined that even though the Elks sells beer and alcoholic beverages to its members and their guests, it is not a place of business because it is a "non-profit corporation, does not operate to create monetary profits, and is not open to the general public." Beynon argues, and we agree, that the trial court used an unduly restrictive definition of the term "place of business."

The plain language of subsection 13-7-2(c)(2) contemplates that entities regulated by the ABCA are subject to the antidiscrimination provisions of the Act. In other words, an entity that applies for and receives a state liquor license under the ABCA subjects itself to the provisions of the Act by accepting the license. The ABCA imposes extensive regulatory control over the sale and consumption of alcoholic beverages in Utah. Under the ABCA, *all* clubs in Utah that dispense alcoholic

---

5. Utah R.Civ.P. 56(c); *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 898 (Utah 1992); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1039 (Utah 1991).

6. *Clover,* 808 P.2d at 1040; *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 636 (Utah 1989); *see also Sanders v. Ovard,* 838 P.2d 1134, 1135 (Utah 1992) (per curiam).

7. Utah Code Ann. § 13-7-3 (emphasis added).

8. *Id.* § 13-7-2(c) (emphasis added).

9. The sale of both beer and liquor is governed by the ABCA. A private club liquor license entitles the holder to dispense both types of alcoholic beverages. *See* Utah Code Ann. § 32A-5-107(24)(d)(i), (ii).

beverages *must* be both nonprofit[10] and private.[11]

The relevant inquiry, then, is whether the Elks qualifies as a business as contemplated by the two statutes. The Elks argues that the trial court was correct in focusing on its private nature and nonprofit status in determining that the Act did not apply. That contention is incorrect for two reasons. First, if those characteristics governed our analysis, the Act would not apply to any private eating and drinking club in Utah because the ABCA *requires* such establishments to be private and nonprofit. As we will discuss in section II.B., that was certainly not the intent of the legislature in drafting the Act. Second, the record belies the Elks' claim that it is not a business. In fact, it is a licensed business under Utah law and St. George city ordinances. It operates a popular restaurant and bar that annually sells over $250,000 worth of alcoholic beverages to its members and their guests. Under the ABCA and the Act, the Elks is no different than any other private eating and drinking club in the state.

In holding that the Act is inapplicable to the Elks, the trial court relied on *Schwenk v. Boy Scouts of America.*[12] In *Schwenk*, the Oregon Supreme Court upheld the sustaining of a demurrer against a nine-year-old girl who was denied membership in the Boy Scouts because of her sex. The *Schwenk* court determined that the Public Accommodation Act, Oregon's civil rights statute, did not apply to the Boy Scouts because it did not qualify as a business or commercial enterprise that offers goods or services to the public.[13]

We think the trial court's reliance on *Schwenk* is incorrect. The Oregon Public Accommodation Act is much narrower than Utah's Act in two important ways.[14] First, the Oregon act expressly excludes from coverage any "bona fide club or place of accommodation which is in its nature distinctly private."[15] No such exception exists in Utah Code Ann. § 13–7–2.[16]

Second, Oregon's act is limited to "places of public accommodation." Utah's Act covers more than public accommodations; it also applies to "all enterprises regulated by the state of any kind whatsoever." This broad language, combined with the specific reference to businesses regulated by the ABCA in subsection 13–7–2(c)(2), leads us to conclude that the Elks is indeed subject to the Act's antidiscrimination mandates. In short, the Elks may not avail itself of the benefits of a liquor license and the license's concomitant state regulation without complying with the legislature's man-

---

10. *See* Utah Code Ann. §§ 32A–5–102(1)(e), 32A–5–105(1).

11. *See id.* § 32A–5–107(2).

12. 275 Or. 327, 551 P.2d 465 (1976).

13. *Id.,* 551 P.2d 465 at 468.

14. The Oregon Public Accommodation Act states:

> **30.670 Right of all persons to equal facilities in places of public accommodation.** All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin.
> **30.675 Places of public accommodation defined.** (1) A place of public accommodation, subject to the exclusion in subsection (2) of this section, means any place or service offering to the public accommodations, advantages, facilities or privileges whether in

the nature of goods, services, lodgings, amusements or otherwise.
> (2) However, a place of public accommodation does not include any institution, bona fide club or place of public accommodation which is in its nature distinctly private.

Or.Rev.Stat. §§ 30.670, 30.675 (1991).

15. *Id.* § 30.675(2).

16. The *Schwenk* decision has been criticized by the Oregon Court of Appeals in *Lloyd Lions Club v. International Ass'n of Lions Clubs,* 81 Or.App. 151, 724 P.2d 887 (1986). In that case, the court read the "distinctly private" exception narrowly and held that the Lions Club was subject to the Oregon Public Accommodation Act because it actively recruited new members and was unselective in its acceptance of male applicants. *Id.,* 724 P.2d 887 at 891. The court of appeals noted that the trial court below, whose decision it upheld, criticized the *Schwenk* court for construing the Oregon act too narrowly. *Id.* The appeals court also referred to the dissent in *Schwenk* as "cogent." *Id.* at 891 n. 3.

date to end discrimination in certain regulated enterprises.[17]

### B. Legislative Intent and Purpose of the Act

The Act's legislative purpose and intent support our determination. Section 13–7–1 states that discrimination by entities governed by the Act violates the public policy of Utah. That section further mandates that the Act "shall be liberally construed with a view to promote the policy and purposes of the act and to promote justice." Moreover, section 13–7–3 applies to "all enterprises regulated by the state of *every kind whatsoever.*" (Emphasis added.) The language of the Act amply demonstrates that the legislature intended it to be construed as broadly as possible to combat invidious discrimination in Utah.

The Act's legislative history also reveals an intent to cover entities such as the Elks. In 1973, the Act was amended to include the phrase "all enterprises regulated by the state." [18] Prior to 1973, the Act prohibited discrimination only in business establishments and places of public accommodation. Because the post–1973 language of subsection 13–7–2(c)(2) specifically governs private clubs regulated by the ABCA, the legislature obviously intended to include such entities within the Act's parameters.

The 1973 amendment also added gender to the list of prohibited classifications for the first time.[19] During debate on the effect of the addition of gender and the phrase "all enterprises regulated by the state," the following colloquy took place:

Senator Howe: ... The purpose of [the 1973 amendment] is, I think, to put into our law, a prohibition against discrimination on account of sex. We already have it on—that we can't discriminate on the basis of race, color, religion, ancestry, national origin; but it was not—discrimination on the basis of sex was not included, in this written law, which was passed in 1965.... Then I note also that it includes not only places of public accommodation but in enterprises regulated by the state. Now I'm not just sure, frankly, what that means, "enterprises regulated by the state," but I suppose it would be ...

Senate President: Just about everybody.

Senator Howe: That's right. In other words, it just, applies, prohibits discrimination generally against women....

Senate President: I'm, I'm not sure about one thing—can you tell me for sure— ... I almost hate to mention it—but, the only place I know of, is the Alta Club that has a separate entrance for women—

Senator Howe: This, this may change that—

....

Discrimination on Basis of Sex: Hearing on H.B. 311, 40th Legislature, 1973 Utah Laws 33 (statements of Sen. Warren E. Pugh, President, and Sen. Richard C. Howe).

The 1973 amendment's legislative debate reveals that the legislature intended that the new language be construed broadly and that the legislature specifically contemplated that the amendment cover private clubs

---

**17.** The Elks cites several cases from other jurisdictions that define "business" in terms of a profit-seeking motive. However, those cases are inapposite because none involve the interpretation of a civil rights act. *See Bhan v. N.M.E. Hosps., Inc.,* 669 F.Supp. 998, 1013 (E.D.Cal. 1987) (antitrust litigation); *State Farm Fire & Casualty Co. v. Geary,* 699 F.Supp. 756, 761 (N.D.Cal.1987) (insurance coverage); *The Way Int'l v. Limbach,* 50 Ohio St.3d 76, 552 N.E.2d 908, 912 (1990) (tax litigation). In contrast, several cases interpreting civil rights acts reject the notion that "business" connotes profit seeking under those statutes. *See O'Connor v. Village Green Owners Ass'n,* 33 Cal.3d 790, 191 Cal.Rptr. 320, 662 P.2d 427, 430 (1983); *War-*

*field v. Peninsula Golf & Country Club,* 214 Cal. App.3d 646, 262 Cal.Rptr. 890, 894 (1989); *Pines v. Tomson,* 160 Cal.App.3d 370, 206 Cal.Rptr. 866, 875 (1984); *Lloyd Lions Club,* 724 P.2d at 891.

Also, requiring a profit motive to qualify an entity as a business under section 13–7–2 would mean that no private club regulated by the ABCA would be a business because private clubs are necessarily nonprofit under the ABCA. This would be an absurd result.

**18.** *See* 1973 Utah Laws ch. 18, § 3.

**19.** *Id.*

such as the Alta Club. Since both the Elks and the Alta Club are nonprofit, have membership criteria, and are regulated under the ABCA, it follows that the Elks is also subject to regulation under the Act.

■ Obviously, the trial court had some difficulty interpreting the term "places of business." However, if doubt or uncertainty exists as to the meaning or application of an act's provisions, the court should analyze the act in its entirety and "harmonize its provisions in accordance with the legislative intent and purpose."[20] Harmonizing the legislative intent and the provisions of the Act in this case leads to the inescapable conclusion that the Elks is subject to its terms.[21]

## IV. FIRST AMENDMENT CLAIM

■ The Elks claims that application of the Act violates its right to free association under the First and Fourteenth Amendments to the United States Constitution and article I, section 1 of the Utah Constitution. We do not reach this issue because this case does not implicate the right to free association.

Under the ABCA, any entity seeking a private club liquor license must submit itself to the intense regulation imposed by the state legislature. One of the many requirements under the ABCA is that licensees must not violate any law or ordinance.[22] The Elks voluntarily elected to abide by the laws of Utah, including the Act, when it applied for and received a private club liquor license. It may not now

reap the benefits of a liquor license without complying with the substantial responsibilities accompanying that license.

As long as the Elks maintains its liquor license, it may not discriminate. Our decision does not impinge on the Elks' right to free association; it merely precludes the Elks from using a state liquor license in a discriminatory fashion. Our reasoning is supported by *Cornelius v. Benevolent Protective Order of the Elks*,[23] a race discrimination case also involving the Elks organization:

> Whatever the freedom of legitimate Elks and Moose lodges to discriminate racially with respect to membership, if they do they stand to forfeit state aid, direct or indirect. . . . Those who believe that racial exclusion fosters fraternity are free to act out their belief, but they may not promote prejudice for profit.[24]

In short, the Elks may not discriminate on the basis of gender as long as it accepts the benefits of a state-issued liquor license.

The Elks cites *Roberts v. United States Jaycees*[25] and *Board of Directors of Rotary International v. Rotary Club of Duarte*,[26] in which the United States Supreme Court articulated several factors for determining when an organization is private enough to warrant associational protection under the First Amendment.[27] The Elks claims that it qualifies for the constitutional protection denied to the Jaycees and Rotary Club in *Roberts* and *Rotary International*.[28] We need not determine

20. *Osuala v. Aetna Life & Casualty*, 608 P.2d 242, 243 (Utah 1980); *see also Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980) ("This Court's primary responsibility in construing legislative enactments is to give effect to the legislature's underlying intent." (citations omitted)); *Jamison v. Utah Home Fire Ins. Co.*, 559 P.2d 958, 959 (Utah 1977).

21. Moreover, we assume that the legislature meant to create a new category of entities that fall under the Act when it added "all enterprises regulated by the state" in 1973. Otherwise, it would just be adding a redundant phrase to the Act. Whenever possible, statutes should be construed so that no portion is superfluous. *See Millett*, 609 P.2d at 936; *Sweitzer v. Dean*, 118 Idaho 568, 798 P.2d 27, 31 (1990). We follow that tenet here.

22. *See* Utah Code Ann. § 32A–5–105(2)(c).

23. 382 F.Supp. 1182 (D.Conn.1974).

24. *Id.* at 1204.

25. 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

26. 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987).

27. *Roberts*, 468 U.S. at 620, 104 S.Ct. at 3250; *Rotary Int'l*, 481 U.S. at 546, 107 S.Ct. at 1946.

28. *Roberts*, 468 U.S. at 621, 104 S.Ct. at 3251; *Rotary Int'l*, 481 U.S. at 547, 107 S.Ct. at 1946.

whether Elks activities should be constitutionally protected because the Elks is free to relinquish its liquor license. Moreover, the unique and highly regulatory scheme of the ABCA at issue here was not present in *Roberts, Rotary International,* or any other case cited by the parties. .

We therefore conclude that the trial court erred as a matter of law when it determined that the Act did not apply to the Elks. As long as the Elks holds a private club liquor license, it must comply with the antidiscrimination provisions of the Act.

### V. BEYNON'S MOTION TO STRIKE

■ After the parties filed their briefs to this court, the Elks filed a pleading entitled "Defendant's First Citation of Supplemental Authorities." The pleading cited to three cases not mentioned in the Elks' appellate brief and contained six pages of discussion concerning those cases. Thereafter, Beynon moved to strike defendant's citation to supplemental authorities, claiming that the Elks violated Utah Rule of Appellate Procedure 24(j).[29] As grounds for her motion, Beynon accurately states that according to rule 24(j), supplemental authorities must be submitted to the court by letter, without argument.

In this case, we believe that the Elks violated rule 24(j). Although supplemental cases may be submitted when "pertinent and significant authorities come to the attention" of the parties after the briefs are filed or after oral argument, the parties should not use the rule to further argue their case to the court. Submitting a supplemental authority of this sort is tantamount to filing another brief, which is obviously not contemplated under rule 24(j).

Although the Elks did not comply with rule 24(j), no purpose would be served in striking the supplemental authorities cited by it in this case. Our research of the relevant law associated with this issue would undoubtedly have revealed the cases, and we are loathe to disregard them in our analysis. However, we strongly suggest that in the future counsel refrain from stretching the boundaries of what is acceptable under rule 24(j).

We have considered the parties' remaining arguments and find them unavailing. According to the trial court's memorandum of decision, the parties agreed that if the Act applied to the Elks, then Beynon is entitled to relief under her complaint. Since no genuine issue of material fact exists and Beynon is entitled to relief as a matter of law, we remand to the trial court for the sole purpose of entering judgment for Beynon in a manner consistent with this opinion.

DURHAM, ZIMMERMAN and ORME, Judge, concur.

STEWART, Justice, concurs in the result.

HOWE, Associate Chief Justice, having disqualified himself, does not participate herein; ORME, Court of Appeals Judge, sat.

---

**29.** After Beynon filed her motion to strike, the Elks filed yet another pleading with supplemental citations, although this pleading simply listed the cases without elaboration.